296 Ga. 650
FINAL COPY

S14A1365.  BRADSHAW v. THE STATE.

THOMPSON, Chief Justice.

Appellant Christopher Bradshaw and Michael Boykin were jointly indicted for malice murder and other crimes in connection with the shooting deaths of Devonta Stembridge and Dion Brice.  The trial court severed the co-defendants' trials, and appellant was tried first, with Boykin testifying against him.  Appellant was convicted on all counts of the indictment, except the count for tampering with evidence, on which the trial court directed a verdict.[1] Appellant appeals, contending that the evidence is insufficient to support his convictions and that the trial court erred by admitting evidence of a prior murder

---

[1] The crimes occurred on June 25, 2011.  On May 31, 2012, appellant was indicted by a Clayton County grand jury for the malice murder of Stembridge and Brice, for the felony murder of Stembridge and Brice, for the aggravated assault of Stembridge and Brice, for criminal attempt to possess marijuana, for the possession of a weapon during the commission of a felony, and for tampering with evidence.  At trial, the trial court directed a verdict on the tampering with evidence count, and on March 14, 2013, a jury found appellant guilty on the other eight counts.  The felony murder verdicts were vacated as a matter of law, and the trial court merged the aggravated assault verdicts with the verdicts on malice murder.  The trial court sentenced appellant to life without the possibility of parole on both malice murder verdicts, to five consecutive years on the firearm verdict, and to 12 concurrent months on the marijuana verdict.  On March 18, 2013, appellant filed a motion for new trial, which he amended on January 17, January 21, and January 22, 2014.  On March 25, 2014, the trial court denied appellant's motion for new trial, as amended.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

committed by appellant.

1. Viewed in the light most favorable to the verdict, the evidence at trial showed that appellant and Boykin both moved from Dayton, Ohio, to Atlanta, where they met in May 2011 and became friends. On June 25, 2011, appellant told Boykin that he wanted to buy a pound of marijuana. Boykin, who at the time of appellant's trial had not made a deal with the State in exchange for his testimony, testified that he arranged for appellant to purchase marijuana from Stembridge. That night, Stembridge and Brice picked up Boykin at his apartment and drove to a nearby apartment complex, where they met appellant. Appellant got in Stembridge's car and sat behind Stembridge, who was in the driver's seat. Brice was in the front passenger seat, and Boykin was sitting behind him.

Before the marijuana sale occurred, Boykin's phone rang, and he stepped out of the car, which had both passenger side windows open. Boykin finished his conversation and, while outside the car, began speaking with the others in the car. He saw Stembridge hand the marijuana to appellant, who said it "didn't feel right," "like it ain't heavy enough." Appellant cut into the marijuana and "hay starting popping out." Appellant then pulled out a chrome semi-automatic

2

handgun and shot Stembridge in the back of the head. Boykin fled and then heard more shots. Boykin turned around and saw appellant running behind him. Appellant took off his cap and white t-shirt (under which he was wearing a white tank top) and threw them to the side. They both ran to Boykin's mother's apartment, which was nearby. Boykin's mother testified that when Boykin and appellant came into the apartment that night, both were sweaty and that appellant was wearing a white tank top and no cap, whereas when she had seen him earlier in the day, he was wearing a white t-shirt and cap. Boykin and appellant went immediately to Boykin's room. According to Boykin, appellant threatened to kill him if he told anyone what he had seen and also said that he knew where Boykin's mother lived. Appellant showered, and he and Boykin then went to appellant's apartment.

Stembridge was shot once in the back of the head, and Brice was shot once in the head and once in the back. Both died from their injuries. Several 9mm shell casings were found in and around the car, and the placement of those casings was consistent with a person shooting from the back seat. Forensic evidence showed that the casings, as well as two bullets recovered from the victims' bodies, were fired from a handgun recovered from appellant's

3

apartment. The police found a cigar in the back seat of the car and a white t-shirt and cap, both with blood on them, near the car. Both the cigar and the cap had appellant's DNA on them, and the blood recovered from the cap and shirt matched Stembridge's DNA.

The State offered evidence of a prior similar crime, which occurred about six months before the present crimes and which the trial court admitted for the limited purpose of proving identity, intent, and motive. Boykin and appellant both have family in Ohio, and Boykin testified that, in early June 2011, he asked appellant to go to Ohio with him. Appellant, however, said that he could not go to Ohio because he was wanted for a murder there. Appellant told Boykin that he had shot Jeffery Beans in the head and killed him because Beans would not pay for drugs that appellant's brother had given him. Appellant said the shooting occurred on Paul Lawrence Dunbar Street in Dayton, Ohio. A Dayton police officer testified that on January 10, 2011, he went to 227 Paul Lawrence Dunbar Street and found Beans's body there. He had been shot multiple times, including in the head, and died.

Appellant's girlfriend testified that, in May and June 2011, she twice saw Boykin with a gun that looked like the murder weapon, and appellant's father,

4

who was visiting his son from Ohio on June 25, 2011, testified that, about 8:00 a.m. that day, he saw Boykin sleeping on his son's sofa with a gun that looked like the murder weapon lying beside him. Shortly thereafter, appellant's father left to return to Ohio.

2. Appellant contends that the evidence is insufficient to support his convictions. More specifically, he argues that this Court may not consider the similar transaction evidence in determining the legal sufficiency of the evidence because that evidence was improperly admitted, and that, without that evidence, the only remaining evidence is the uncorroborated testimony of his co-defendant. Appellant is wrong on both counts.

As explained in Division 3 below, the trial court did not err by admitting the similar transaction evidence, and we thus consider it in determining the sufficiency of the evidence. Moreover, even if the trial court had erred in admitting the evidence, this Court could nevertheless consider it in determining the legal sufficiency of the evidence. See Cowart v. State, 294 Ga. 333, 343 (751 SE2d 399) (2013) (explaining that, in determining the sufficiency of the evidence, a reviewing court "must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously"

(citation and punctuation omitted)).[2]

As for appellant's claim that Boykin's testimony was not properly corroborated, Georgia's new Evidence Code provides that to sustain a felony conviction, the testimony of an accomplice must be corroborated.[3]  See OCGA § 24-14-8.  This Code section is virtually identical to the corroboration provision in the old Evidence Code.  See former OCGA § 24-4-8.  In enacting the new Evidence Code, the General Assembly expressed its intent as follows:

> It is the intent of the General Assembly in enacting this Act to adopt the Federal Rules of Evidence, as interpreted by the Supreme Court of the United States and the United States circuit courts of appeal as of January 1, 2013, to the extent that such interpretation is consistent with the Constitution of Georgia. Where conflicts were found to exist among the decisions of the various circuit courts of appeal interpreting the federal rules of evidence, the General Assembly considered the decisions of the 11th Circuit Court of Appeals.  It is the intent of the General Assembly to revise,

---

[2] There was an exception to this rule under Georgia's old Evidence Code for improperly admitted hearsay evidence, which was "deemed to have no probative value and so could not be considered in determining the sufficiency of the evidence." Cowart, 294 Ga. at 343, n.12.  Under our new Evidence Code, if "a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." OCGA § 24-8-802.  See Paul S. Milich, Ga. Rules of Evidence § 16:7 (citing this provision of the new Evidence Code and saying that "[o]n January 1, 2013, Georgia will be the last jurisdiction in the nation to abandon the 19th century fiction that hearsay is 'illegal' evidence with no probative value.  Under the pre-2013 rule, even if hearsay was admitted without objection, it could not sustain a finding or verdict based upon it." (footnote omitted)).

[3] Because appellants' trial was held after January 1, 2013, the corroboration provision of Georgia's new Evidence Code is applicable.  See Ga. L. 2011, pp. 99, 214, § 101.

6

> modernize, and reenact the general laws of this state relating to evidence while adopting, in large measure, the Federal Rules of Evidence. The General Assembly is cognizant that there are many issues regarding evidence that are not covered by the Federal Rules of Evidence and in those situations the former provisions of Title 24 have been retained. Unless displaced by the particular provisions of this Act, the General Assembly intends that the substantive law of evidence in Georgia as it existed on December 31, 2012, be retained.

See Ga. L. 2011, p. 100, § 1.

The Federal Rules of Evidence contain no provision regarding accomplice testimony, and the "'uncorroborated testimony of an accomplice is sufficient to support a conviction in the Federal Courts if it is not on its face incredible or otherwise insubstantial.'" United States v. LeQuire, 943 F2d 1554, 1562 (11th Cir. 1991) (citation omitted). Accord United States v. Henley, 360 F3d 509, 513 (6th Cir. 2004) ("'[I]t is well-settled that uncorroborated testimony of an accomplice may support a conviction in federal court.'" (citation omitted)).

In the absence of a provision in the Federal Rules of Evidence governing accomplice testimony, in light of the General Assembly's statement that it did not intend to change the substantive law of Georgia as existing on December 31, 2012, unless that law was displaced by a provision of the new Evidence Code, and in light of the nearly identical language of the accomplice provisions in the

old and new Evidence Codes, we give the new accomplice provision the same meaning as the old one. See City of Thomaston v. Bridges, 264 Ga. 4, 6 (439 SE2d 906) (1994) (noting the "rule of construction that absent a clear indication to the contrary, this Court should accord to virtually identical language in successor provisions the same construction given the original language"). See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A., 559 U. S. 573, 589-590 (130 SCt 1605, 176 LE2d 519) (2010) ("We have often observed that when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" (citation omitted)).

> Regarding accomplice testimony, we have said that
>
> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

Threatt v. State, 293 Ga. 549, 551 (748 SE2d 400) (2013) (citations and

8

punctuation omitted).

Here, there was ample corroboration of Boykin's testimony. In addition to the similar transaction evidence, the murder weapon was found in appellant's home; a cap and t-shirt like the ones that Boykin said appellant discarded near the murder scene were found near there; appellant's DNA was found on the cap; and Stembridge's DNA was found on the cap and t-shirt. Thus, there was sufficient corroboration of Boykin's testimony, and viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient to authorize a rational jury to find beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

3. Appellant contends that the trial court erred by admitting evidence of the Ohio murder as a similar transaction. We disagree.

Because appellant's trial was held after January 1, 2013, Georgia's new Evidence Code governs this contention. OCGA § 24-4-404 (b) of the new Code says:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other

9

purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Moreover, under OCGA § 24-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Both of these provisions track their federal counterparts. See Rules 403 and 404 (b) of the Federal Rules of Evidence.

The Eleventh Circuit applies a three-part test to determine admissibility of evidence of other crimes and acts under Rule 404 (b):

> (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

United States v. Ellisor, 522 F3d 1255, 1267 (11ᵗʰ Cir. 2008).[4]  A leading

_____

[4] As for the third prong of this test, the United States Supreme Court has held that Rules 104 and 404 (b) of the Federal Rules of Evidence do not require, as a condition of admissibility, a preliminary finding by the trial court that the government has proved the other crime by a preponderance of the evidence.  See Huddleston v. United States, 485 U. S. 681, 688-689 (108 SCt 1496, 99 LE2d 771) (1988).  Instead, the Court held, other acts evidence may be admitted if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed.  Id. at 689-690.  The Court also noted that, although the petitioner initially argued that the government was required to prove the other crime by clear and convincing

treatise on federal evidence law says that this test is the substantial equivalent of the test applied by other federal courts, see 2 Weinstein's Federal Evidence § 404.21 [1] [b]-[m], but even if the Eleventh Circuit test is in conflict with that of other federal circuit courts, the General Assembly has expressed its intent to follow the Eleventh Circuit as of January 1, 2013, in the event of such a conflict. We thus apply the Eleventh Circuit rule. This includes its rule, which is consistent with this State's longstanding rule regarding the admission of evidence, that a decision to admit evidence under Federal Rules of Evidence 403 and 404 (b) is reviewed for a "'clear abuse of discretion.'" United States v. McNair, 605 F3d 1152, 1203, n. 69 (11th Cir. 2010) (citation omitted).

As for the first prong of the analysis, the trial court admitted evidence of the Ohio crime to show intent, motive, and identity. With regard to intent,

> "[a] defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent

evidence, the petitioner properly conceded at oral argument that his position was wrong in light of the Court's decision in Bourjaily v. United States, 483 U. S. 171 (107 SCt 2775, 97 LE2d 144) (1987), in which the Court held that "preliminary factual findings under Rule 104 (a) are subject to the preponderance-of-the-evidence standard." Huddleston, 485 U. S. at 687, n. 5. Our new Evidence Code has adopted the preponderance of the evidence standard for preliminary factual questions regarding the admissibility of evidence. See OCGA § 24-1-104 (a) ("Preliminary questions shall be resolved by a preponderance of the evidence standard.").

11

as an issue." "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.

United States v. Edouard, 485 F3d 1324, 1345 (11th Cir. 2007) (citations omitted). Because the murder of the victim in this case and the Ohio case involve the same mental state and appellant did not take steps to remove intent as an issue, evidence of the Ohio murder was relevant to establish his intent.

We also conclude that the evidence was admissible to show motive. Motive has been defined as "'the reason that nudges the will and prods the mind to indulge the criminal intent.'" United States v. Beechum, 582 F2d 898, 912, n. 15 (5th Cir. 1978) (citation omitted). In this case, the evidence of the Ohio murder was relevant to motive because it demonstrated appellant's willingness to use violence when he or someone close to him is cheated in a drug deal. See United States v. Banks, 514 F3d 959, 976 (9th Cir. 2008) (holding that evidence of the defendant's prior stabbing of someone who insulted his gang status was admissible to prove motive under Rule 404 (b) in his trial for attempted murder

of someone else who also insulted his gang status).[5]

Moreover, we are satisfied that the trial court did not abuse its discretion in determining that the probative value of evidence of the Ohio crime, which was factually similar to the Georgia crimes and occurred only six months before them and which was needed by the State to help establish that appellant and not Boykin was the shooter, was not substantially outweighed by its prejudicial effect. See United States v. Perez, 443 F3d 772, 780 (11th Cir. 2006) (saying that "[t]his determination lies within the discretion of the district court and 'calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness.'" (citation omitted)); United States v. Merrill, 513 F3d 1293, 1301 (11th Cir. 2008) (saying that a trial court's discretion to exclude evidence under the balancing test of "'Rule 403 is an extraordinary remedy which should be used only sparingly

_____

[5] Having determined that the evidence was admissible as to intent and motive, we need not examine whether it was also admissible on the issue of identity. See United States v. Phaknikone, 605 F3d 1099, 1108 (11th Cir. 2010) (saying that for purposes of proving identity, "the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. . . . The extrinsic act must be a 'signature' crime, and the defendant must have used a modus operandi that is uniquely his." (citations and punctuation omitted)).

since it permits the trial court to exclude concededly probative evidence'" (citation omitted)); <u>United States v. Terzado-Madruga</u>, 897 F2d 1099, 1119 (11th Cir. 1990) (saying that in close cases, the balance under Rule 403 should be struck in favor of admissibility).

Finally, contrary to appellant's contention, the third prong of the test is also satisfied. Based on appellant's statements to Boykin and the testimony of the Ohio officer, a jury could have found by a preponderance of the evidence that appellant committed the Ohio crime. See <u>Edouard</u>, 485 F3d at 1345.

For these reasons, we conclude that the trial court did not abuse its discretion by admitting evidence of the Ohio crime.

<u>Judgment affirmed. All the Justices concur.</u>

Decided March 2, 2015.

Murder. Clayton Superior Court. Before Judge Benefield.

<u>Stanley W. Schoolcraft III</u>, for appellant.

<u>Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior</u>

Assistant Attorney General, Vicki S. Bass, Assistant Attorney General, for

appellee.