**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1193. OCONEE INVESTMENT GROUP, LLC v. TURK.

MCFADDEN, Presiding Judge.

Oconee Investment Group, LLC ("Oconee") brings this interlocutory appeal from the trial court's denial of its motion for summary judgment as to various claims brought by Lisa Denton Turk in connection with referral services she provided to Oconee in a real estate transaction. On appeal, Oconee claims that OCGA § 43-40-24 (a) bars Turk from bringing this action to recover commissions or compensation for those services because she does not possess a valid Georgia real estate brokerage license. But Turk's activities fell within an exception to the statute's prohibition, so we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a trial court's decision on a motion for summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, the evidence shows that Oconee, through its agent, offered to sell Turk multiple lots and trailers in a real estate development. Turk declined the offer because she did not have the funds for the purchase. Oconee and Turk then reached an agreement whereby Oconee would give Turk a specific lot and trailer in the development if Turk referred to Oconee a bona fide purchaser for the remaining lots and trailers and a specified minimum price per lot. When the parties entered into this agreement, Turk did not hold a Georgia real estate brokerage license.

Turk referred to Oconee a buyer who ultimately purchased the lots and trailers. But Oconee refused to pay Turk either the agreed-upon referral compensation of a lot and trailer or, alternatively, a fee of $20,000 that Turk agreed to accept in lieu of the lot and trailer. Instead, Oconee offered to pay Turk a cash fee of $7,200 or a credit toward the purchase of the lot and trailer. Turk declined this offer.

Turk sued Oconee for breach of contract, fraud, quantum meruit, and unjust enrichment. She sought specific performance of her agreement with Oconee in the form of the lot and trailer or, alternatively, damages of either $20,000 or a sum

2

representing the reasonable value of her services. Oconee moved for summary judgment on these claims, the trial court denied Oconee's motion, and we granted interlocutory appellate review.

Oconee argues on appeal that it is entitled to summary judgment on the ground that OCGA § 43-40-24 (a) bars each of Turk's claims because she did not have a Georgia real estate brokerage license. We disagree.

Chapter 40 of Title 43 prohibits an unlicensed person from "[h]old[ing] himself or herself out as a referral agent for the purpose of securing prospects for the listing, sale, purchase, exchange, renting, lease, or option for any real estate[.]" OCGA § 43-40-1 (2) (B). Among the sanctions for violations of that prohibition is a bar from collecting fees. OCGA § 43-40-24 (a) provides, "No person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in this chapter [Chapter 40] without alleging and proving that he was a licensed broker in Georgia at the time the alleged cause of action arose."

But there are statutory exceptions. OCGA § 43-40-29 (a). While certain of those exceptions, and a prior version of the exceptions statute as a whole, have been

3

construed to not contemplate recovery of fees, in its current version, the exception at issue here expressly contemplates fees. It provides that Chapter 40 does not apply to

> [a]ny person acting as a referral agent who is not involved in the actual negotiations, execution of documents, collection of rent, management of property, or other related activity which involves more than the mere referral of one person to another and who:
>
> (A) Does not receive a *fee* for such referral from the party being referred;
>
> (B) Does not charge an advance *fee*; and
>
> (C) Does not act as a referral agent in more than three transactions per year.

OCGA § 43-40-29 (a) (9) (emphasis supplied).

The unambiguous language of OCGA § 43-40-29 (a) (9) permits a person, under certain circumstances, to act as a "referral agent" without implicating other provisions of Chapter 40, including the compensation bar of OCGA § 43-40-24 (a). And the prohibitions in subsections (A) and (B) of fees "from the party being referred" and "advance fee[s]," by necessary implication, permit other sorts of fees.

The evidence, viewed most favorably to Turk, shows that her actions fell within the exception set out in OCGA § 43-40-29 (a) (9). Turk testified in an affidavit that Oconee "expressly offered her [a] referral fee of the parts trailer and lot if [she] would refer a bona fide buyer for the 24 remaining trailers at the . . . development for a selling price of $30,000.00 each"; that she "did, in fact, locate [such a] bona fide purchaser"; and that "[t]he prospective purchaser referred by [her] to [Oconee] did, in fact, sign a contract and did close on the sale of the trailers at issue[.]" This testimony, viewed in Turk's favor, shows that Turk was "acting as a referral agent who is not involved in the actual negotiations, execution of documents, collection of rent, management of property, or other related activity which involves more than the mere referral of one person to another[,]" OCGA § 43-40-29 (a) (9), and that she did "not receive a fee for such referral from the party *being referred*[.]" OCGA § 43-40-29 (a) (9) (A) (emphasis supplied). And Oconee has pointed to no evidence showing that Turk either "charge[d] an advance fee[,]" OCGA § 43-40-29 (a) (9) (B), or "act[ed] as a referral agent in more than three transactions per year." OCGA § 43-40-29 (a) (9) (C). Because the evidence raises a question of fact as to whether Turk's activities fell within the exception in OCGA § 43-40-29 (a) (9), Oconee was not entitled to summary judgment.

5

In its appellate brief, Oconee cites several cases that do not address the current version of OCGA § 43-40-29 (a) (9) and therefore do not require a different outcome. In 1985, the statute was amended to substantially its present form. See Ga. L. 1985, p. 378, § 18.

Our Supreme Court's decision in *Berchenko v. Fulton Fed. Sav. & Loan Assn. of Atlanta*, 244 Ga. 733 (271 SE2d 643) (1979), construed Code Ann. § 84-1403, an earlier version of the statute that did not include the exception currently set out in OCGA § 43-40-29 (a) (9). In determining that Code Ann. §84-1403 did not exempt a referral agent who received compensation from the licensure requirements not set forth in Chapter 40, the Court in *Berchenko* observed that "*[n]one* of the nine sub-sections in §84-1403 relate to persons who will personally receive a fee, commission or other valuable consideration from the seller for services rendered outside of their regular employment." Id. at 734 (footnote omitted; emphasis supplied).

That observation is no longer true. As noted above, the current version of the statute, OCGA § 43-40-29 (a) (9), now expressly contemplates referral fees. Subsection (a) (9) expressly omits from its coverage only persons who charge or receive certain *types* of referral fees. The current version of OCGA § 43-40-29, including subsection (a) (9), "is the latest expression by the legislature on this point

and must prevail over . . . earlier opinion[s] construing then Code Ann. [§84-1403.]"
*Smith v. State*, 218 Ga. App. 429, 429-430 (1) (461 SE2d 553) (1995) (citation omitted). So the *Berchenko* decision is not controlling and does not require us to construe OCGA § 43-40-29 (a) (9) in a manner inconsistent with its unambiguous language.

Our decisions in *Everett v. Goodloe*, 268 Ga. App. 536 (602 SE2d 284) (2004), and *Johnson v. Oriental Weavers Rug Mfg. Co.*, 241 Ga. App. 15 (525 SE2d 738) (1999), likewise do not support the grant of summary judgment to Oconee. It is true that those decisions were rendered after OCGA § 43-40-29 had been amended to include the current version of subsection (a) (9). But the court in *Everett* did not rule on the applicability of subsection (a) (9) because, unlike Turk, the plaintiff in that case did not argue to the trial court that she was a referral agent exempt from Chapter 40 under that subsection. See *Everett*, supra at 539 (1) (a). And the court in *Johnson* did not construe subsection (a) (9) but expressly limited its holding to a different subsection, OCGA § 43-40-29 (a) (8). See *Johnson*, supra at 16. To the extent that the language of *Johnson* could be read to apply so broadly as to construe subsection (a) (9), it is dicta. While it is true that no prior decision of this court or our Supreme Court has addressed or acknowledged the General Assembly's express references to

7

fees in the current version of subsection (a) (9), the significance of that language is now squarely before us and we may not ignore it.

Because, under OCGA § 43-40-29 (a) (9), Turk is exempt from Chapter 40's licensure requirement, the compensation bar of OCGA § 43-40-24 (a) does not apply to her, and Oconee was not entitled to summary judgment on that ground.

*Judgment affirmed. Barnes, P. J. and Miller, P. J., concur. Doyle, Branch, McMillian, Reese, JJ., concur. Bethel, J., dissents.*

A17A1193. OCONEE INVESTMENT GROUP, LLC v. TURK.

BETHEL, Judge, dissenting.

Today, for the first time, our Court decides that an individual without a real estate license has standing to sue for commissions earned from the provision of real estate brokerage services. As this decision is contrary to previous interpretations of the real estate brokerage licensing statute in binding decisions of this Court and our Supreme Court, I respectfully dissent.

OCGA § 43-40-24 (a) provides that "[n]o person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in this chapter without alleging and proving that he was a licensed broker in Georgia at the time the alleged cause of action arose." The parties agree that Turk did not have a Georgia real estate brokerage license at the time of the events giving rise to this suit. This Court today nevertheless rules that because Turk has brought forth evidence that she can satisfy one of the exemptions from the licensing requirement set forth in OCGA § 43-40-29 (a), she should be permitted to enforce her referral agreement with Oconee and collect compensation for her services.

Both the Georgia Supreme Court and this Court have previously noted that exemptions from the licensing requirement were implemented by the General Assembly as safe harbors to protect non-brokers who engage only in incidental, non-brokerage activities related to a real estate transaction or who provide referrals without the expectation of receiving compensation. *See Johnson v. Oriental Weavers Rug Mfg. Co., Inc.*, 241 Ga. App. 15, 16 (525 SE2d 738) (1999) *(citing Berchenko v. Fulton Fed. Sav. & Loan Assn. & Co.*, 244 Ga. 733, 734 (2) (261 SE2d 643) (1979)). Such exemptions allow non-brokers to engage in activities that closely relate to real

2

estate transactions while avoiding collateral consequences associated with unlicensed brokerage activities, including criminal penalties.[1] In providing these protections, the exemptions do not confer the positive benefits and rights attendant to licensed brokerage. As *Johnson* clearly stated, even though OCGA § 43-40-29 (a) creates exemptions from the licensing requirement, those exemptions are not "a basis for circumventing the rule that only licensed brokers have standing to sue for a commission." 241 Ga. App. at 16 (citing *Berchenko*, 244 Ga. at 734 (2)).

The majority is correct in noting that *Johnson* applied specifically to the exception set forth in OCGA § 43-40-29 (a) (8), relating to full-time employees who provide property or community association management services. However, the principle articulated in *Johnson*–that eligibility for an exemption does not liberate an unlicensed individual from the bar on seeking compensation for real estate brokerage services–applies broadly to all of the exemptions set forth in subsection (a) of Code Section 43-40-29.

The majority opinion makes much of the fact that *Berchenko*, on which *Johnson* relied, was decided prior to the General Assembly's amendments to the real

---

[1] *See* OCGA § 43-40-31 ("Any person acting as a real estate licensee within the meaning of this chapter without a license and any person who violates any other provision of this chapter shall be guilty of a misdemeanor.").

estate licensing statute which brought it to its present form. While it is correct that numerous amendments to the Code section providing for new and expanded exemptions from the licensing requirement have been added since *Berchenko* was decided in 1979, the introductory language of the Code section providing for the licensing exemptions is, in every meaningful way, the same now as it was in 1979.[2] Likewise, the language of the Code section barring individuals without a brokerage license from seeking compensation by is similarly unchanged since *Berchenko* was decided.[3]

In *Berchenko*, with these provisions before it, the Supreme Court interpreted former Code Section 84-1403 to mean that even if a person could claim an exemption

---

[2] *Cf.* Ga. L. 1973, p. 100, § 1 (former Code Section 84-1403, providing that "Except as otherwise provided in this Chapter, the provisions of this Chapter shall not apply to . . .") with current OCGA § 43-40-29 (a), providing that "Except as otherwise provided, this chapter shall not apply to . . .").

[3] *Cf.* Ga. L. 1973, p. 100, § 1 (former Code Section 84-1404 (a), providing that "No person shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this Chapter without alleging and proving that he was a duly licensed real estate broker or salesman at the time the alleged cause of action arose.") with current OCGA § 43-40-24 (a) (providing that "No person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in this chapter without alleging and proving that he was a licensed broker in Georgia at the time the alleged cause of action arose.")

from licensure, that person was barred from suing for compensation under former Code Section 84-1404 (a). *Berchenko*, 244 Ga. at 734 (2). The reference to *Berchenko* in *Johnson* highlights this Court's previous recognition that this principle was undisturbed by the General Assembly's reorganization of the real estate brokerage licensing statutes between the time *Berchenko* and *Johnson* were decided.

*Johnson* thus comports with a basic canon of statutory interpretation. As our Supreme Court has noted, when statutes are reorganized or amended, and language from the original version of the statute is carried into the new version, prior interpretations of that language by this Court and the Supreme Court are essentially baked into the revised version of the statute, absent contrary direction from the General Assembly. *See Bradshaw v. State*, 296 Ga. 650, 654 (769 SE2d 892) (2015) (noting that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well." (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich, L.P.A.*, 559 U.S. 573, 589-90 (130 SCt 1605, 176 LE2d 519) (2010)). As our Supreme Court has further elaborated, absent a clear indication to the contrary, we should "accord to virtually identical language in successor provisions the same construction given the original

5

language." *City of Thomaston v. Bridges*, 264 Ga. 4, 6 (439 SE2d 906) (1994). I see no reason to depart from this principle in interpreting the language of this statute.[4]

Just as this Court clearly understand itself to be bound by prior Supreme Court authority when it decided *Johnson*, we remain bound by the Supreme Court's reading of the statute as surely as we are by any other decision of that tribunal, regardless of our respective views as to the merits of those decisions. *See* Ga. Const. Art. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."). As this Court has previously noted, "[t]his mandate is not contingent, and the Court of Appeals is not at liberty to modify Supreme Court precedent." *Zachery v. State*, 233 Ga. App. 519, 521 (504 SE2d 466) (1998). Likewise, because *Johnson* was decided by a unanimous three-judge panel of this Court, we are bound by its terms until expressly overruled. *See Johnson*, 241 Ga. App. at 16 (noting full concurrence of each judge on the panel); Court of Appeals Rule 33 (a) (providing in part that "If

_____

[4] I am unpersuaded by the majority's construction of the exemption in sub-part (a) (9) and its application to the facts of this case. The majority suggests that, because subpart (a) (9) references referral and advance fees, a person claiming this exemption would have the ability to make a claim to a fee. However, rather than outlining what type of compensation a person may receive and still qualify for this exemption, sub-part (a) (9) speaks only to what such a person *cannot* receive. Such a person cannot charge an advance fee, nor may he or she receive a fee from a person being referred. Nothing in the language of that exemption suggests that an unlicensed person could provide a referral and then have the right to sue for compensation.

an appeal is decided by a Division of this Court, a judgment in which all three panel judges fully concur is a binding precedent[.]")

Moreover, while suggesting that *Berchenko* no longer controls the interpretation of this statute, like Turk, the majority points to no decision of this Court or the Supreme Court holding that an unlicensed person who is exempt from the licensing requirement can still seek compensation for real estate brokerage services. Because *Johnson* states clearly that the exceptions set forth in subsection (a) of Code Section 43-40-29 are not "a basis for circumventing the rule that only licensed brokers have standing to sue for a commission," it is my view that the majority's reading of this statute would require this Court to overrule *Johnson*, as I can discern no rationale for treating the exception set forth in subpart (9) (claimed here by Turk) differently from the other exceptions set forth in subsection (a) of Code Section 43-40-29. Nevertheless, although it is irreconcilable with the decision the majority announces today, *Johnson* apparently stands.

Thus, in contrast to the view of the majority, assuming without deciding that Turk's activities in this case satisfy one of the exceptions set forth in OCGA § 43-40-29 (a), I would rule that such an exemption would only dispense with her obligation to obtain a real estate license in order to perform such activities and avoid the

7

negative consequences of acting as a broker without a license. I would thus hold that even if satisfied, no exemption from the licensing requirement would permit her to bring suit for the recovery of compensation for brokerage activities because OCGA § 43-40-24 (a) clearly requires that a person be "a licensed broker in Georgia" in order to maintain an action for the collection of compensation. *See Everett v. Goodloe*, 268 Ga. App. 536, 540 (602 SE2d 284) (2004) (finding plaintiff's attempt to recover a fee for procuring a buyer for defendant was prohibited because plaintiff was not a licensed real estate broker). I would therefore reverse the decision of the trial court denying Oconee's motion for partial summary judgment.