# FOURTH DIVISION
## DOYLE, P. J.,
## COOMER and MARKLE, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A2358. THE STATE v. WATSON.                              DO-080 C

DOYLE, Presiding Judge.

Patrick Watson was indicted for armed robbery, hijacking a motor vehicle, robbery by sudden snatching, kidnapping, theft by receiving stolen property, fleeing and attempting to elude a police officer, and obstruction of an officer. Prior to trial, the State moved to admit evidence of other acts under OCGA § 24-4-404 (b), which motion the trial court denied. The State now appeals, arguing that the trial court improperly applied OCGA §§ 24-4-404 (b) and 24-4-403 to exclude extrinsic evidence of other acts for the purposes of showing motive, intent, and knowledge.[1] For the reasons that follow, we affirm.

---

[1] The State followed the procedures to appeal this order as outlined in OCGA § 5-7-1 (a) (5) (A).

The record shows that Watson, LaMarcus Jackson ("LaMarcus"), Xavier Jackson ("Xavier"), a minor individual, and Marquis Barnes were indicted for numerous offenses stemming from a 2016 incident in which the men allegedly stole a Jeep occupied at the time by the owner's 8-month old infant, who was strapped into a car seat in the back of the vehicle while the men attempted to escape police. Prior to stealing the Jeep, the State alleged that Watson, LaMarcus, Barnes, and the two other individuals attempted to steal a Mercedes but Watson was unable to start the vehicle after taking the owner's keys from her at gunpoint. The men drove in their previously stolen sedan from that scene to the gas station, where Watson is alleged to have entered the Jeep through the passenger's side while the owner pumped gas. Watson drove away in the Jeep with the infant in the car and was followed by the other individuals in the sedan. A police chase of both vehicles ensued, and after the vehicles eventually crashed, the co-conspirators fled on foot. Police immediately apprehended LaMarcus and Barnes, Xavier was identified through belongings in a vehicle and arrested one month later, and the minor was arrested one month later based on co-conspirator statements.

Approximately two years later, Xavier agreed to cooperate with police and identified Watson as the remaining unapprehended co-conspirator and identified him

as the driver of the Jeep; Xavier agreed to plead guilty and testify against LaMarcus, Barnes, and Watson. After Watson was apprehended, police obtained a warrant and took DNA and hair samples from him to try and match the hair discovered at the scene in the area where the driver would have been in the Jeep when it crashed. Investigators were able to visually compare the hair samples to the hair found at the scene, but an attempted DNA match was not conclusive.

Prior to trial, the State moved to introduce evidence of prior acts committed by Watson, including three instances of him stealing or being found in possession of stolen vehicles and personal property.

### 2012 Act

In 2013, Watson entered a guilty plea based on incidents occurring in 2012 in which Watson snatched keys off a coffee shop table, stole the victim's unattended vehicle from the parking lot, and fled from police when he was spotted in the vehicle the next day. Watson also was charged in the same indictment for four sudden snatching thefts of personal electronics.

### 2014 Act

The second extrinsic act the State sought to introduce was evidence that in late 2014, Watson snuck into a vehicle in a repair shop parking lot while the owner of the

vehicle was talking with her father and another individual. The father and the other individual got into their cars and chased Watson, who ultimately crashed the stolen vehicle and fled on foot. Police responded to the area of the crash and located Watson after a search of the area; Watson pleaded guilty in 2015 to the charges arising therefrom.

*2016 Act*

Finally, the State sought to introduce evidence from an extrinsic act in 2016 during which police stopped a vehicle driven by Watson, discovered a handgun in plain view, prompting officers to attempt to detain Watson, who refused to comply with instructions, leading to the use of non-lethal force to arrest him. Watson pleaded guilty in 2017 to possession of a firearm and obstruction.

At the hearing on various pre-trial motions, the State requested that the trial court admit the prior acts evidence for proof of motive, intent, knowledge, absence of mistake or accident, and to rebut any material assertion presented by Watson. The court questioned the State as to how it was supposed to rule on use of the evidence for rebuttal to arguments not yet presented by Watson, and the State conceded that "if it's not going to be raised, I understand the Court's concern in admitting it for those purposes, and I think it can just be reserved until such time it becomes relevant or

4

necessary. If it's never raised, then I agree, I don't think it would be for the purpose of disproving anything that's not raised." The State also conceded that the extrinsic acts were not sufficiently similar to be admitted in order to show identity. The State insisted, however, that the court should admit the evidence on the basis of its relevance to Watson's motive, intent, or knowledge.

The State first argued that it needed the extrinsic evidence of the other acts to prove motive, which it contended was "the sheer joy and thrill of " stealing vehicles and fleeing from authorities, rather than simple desire to possess the stolen items. The State next argued that the extrinsic evidence was relevant to Watson's intent, which he had put into issue by pleading not guilty to the charges. The State maintained that Watson's intent was the same in the extrinsic acts as compared to the instant charges because they involved similar crimes of sudden snatching thefts, stealing vehicles, and fleeing from police in high speed chases, and they showed his willingness to possess firearms during other crimes. Finally, the State argued that the extrinsic evidence was relevant to show common knowledge among the defendants that they were participating in the conspiracy to steal the vehicles (or attempt to do so). The State argued its need for the extrinsic act evidence was high because its case against Watson rested only on the visual hair analysis and co-conspirator statements. The

State had subpoenaed approximately 80 witnesses total if necessary to prove the extrinsic acts it wished to submit against Watson and Barnes.[2]

The trial court denied the State's motion, finding that because Watson's defense rested on his claim that he was not involved in the crimes at all, rather than a mere presence defense, the extrinsic evidence was prejudicial and should not be admitted. The trial court explained that the extrinsic evidence was not sufficiently probative to the issue of motive, which was apparent based on the nature of the charges, intent was not a heavily contested issue and would also be apparent based on the nature of the charges, and the incidents did not involve the type of specialized knowledge such that the probative value of the extrinsic evidence overcame its prejudicial effect of entering into the record propensity or bad character evidence against Watson.

1. As an initial matter, Watson contends that the State's appeal should be dismissed because it was taken for the purposes of delay and because the evidence excluded by the trial court did not constitute substantial proof of a material fact in the proceeding.

---

[2] The trial court also granted in part and denied in part the State's motion to admit evidence of other acts against Barnes, but that order is not before this Court.

6

Pursuant to OCGA § 5-7-1 (a) (5), the State is allowed to appeal

> from an order, decision, or judgment excluding any other evidence to be used by the [S]tate at trial on any motion filed by the [S]tate or defendant at least 30 days prior to trial and ruled on prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first, if: (A) Notwithstanding the provisions of Code Section 5-6-38, the notice of appeal filed pursuant to this paragraph is filed within two days of such order, decision, or judgment; and (B) The prosecuting attorney certifies to the trial court that such appeal is not taken for purpose of delay and that the evidence is a substantial proof of a material fact in the proceeding.

Watson contends that the State's appeal does not meet the criteria for appealing under this Code section because the appeal was taken for purposes of delay, and because the extrinsic evidence excluded by the trial court does not meet the definition of evidence of substantial proof of a material fact. In addition to the fact that Watson failed to file a cross-appeal, we disagree with his substantive argument.

Prior to 2013, the State did not have the right to appeal pre-trial evidentiary decisions,[3] but since the Code was amended at that time, this Court has recognized that such rulings are appealable by the State under OCGA § 5-7-1 (a) (5).[4] To the

---

[3] See *State v. Lynch*, 286 Ga. 98, 102 (2) (686 SE2d 244) (2009).

[4] See *State v. Battle*, 344 Ga. App. 565, 567-569 (1) & (2) (812 SE2d 1) (2018).

extent that Watson contends that this appeal does not meet the requirement of OCGA 5-7-1 (a) (5) (B) in that the exclusion of the extrinsic evidence did not affect substantial proof of a material fact, we disagree. The extrinsic evidence was offered to assist the State in proving motive, intent, and knowledge, which are material issues in the case. Therefore, the State was authorized to appeal. As for the argument that the State pursued the appeal for purposes of delay because Watson had a motion for speedy trial pending, we decline to hold that the mere existence of such a motion prohibits the State from exercising its right to appeal under OCGA § 5-7-1 (a) (5).

2. The State argues that the trial court abused its discretion by excluding the extrinsic evidence of Watson's other acts for the purposes of showing intent, motive, and knowledge because the acts were relevant to those issues, were similar to the charges, and occurred close in time.

We review a trial court's decision to exclude other acts evidence for a clear abuse of discretion.[5] This Court construes "the evidentiary record in the light most favorable to the factual findings and judgment of the trial court."[6]

---

[5] See *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015).

[6] (Punctuation omitted.) *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015).

OCGA § 24-4-404 (b) provides that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In *Bradshaw v. State*,[7] the Georgia Supreme Court applied the federal test for admission of extrinsic evidence under the federal rule identical to OCGA § 24-4-404 (b), explaining that in order to determine admissibility of extrinsic other acts evidence "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[8] Relevant evidence is evidence that "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[9] The Court has explained that

---

[7] 296 Ga. 650, 657 (3) (769 SE2d 892) (2015).

[8] (Punctuation omitted.) Id. at 656 (3).

[9] OCGA § 24-4-401.

[e]ven relevant evidence offered for a proper purpose under [OCGA § 24-4-404 (b)] may be excluded under OCGA § 24-4-403 . . . if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[10]

The major function of OCGA § 24-4-403 is to 'exclude matter of scant or cumulative probative force, dragged in by its heels for the sake of its prejudicial effect,' and exclusion of evidence under the statute is 'an extraordinary remedy which should be used only sparingly.' Factors to be considered in determining the probative value of other act evidence . . . include its overall similarity to the charged crime, its temporal remoteness, and the prosecutorial need for it. [11]

"Motive has been defined as the reason that nudges the will and prods the mind to indulge the criminal intent."[12] With regard to intent, the Georgia Supreme Court has held that

---

[10] (Punctuation omitted.) *Jones*, 297 Ga. at 158 (1).

[11] (Punctuation omitted.) *Jackson v. State*, 306 Ga. 69, 77 (2) (b) (ii) (829 SE2d 142) (2019), quoting *Hood v. State*, 299 Ga. 95, 102-103 (786 SE2d 648) (2016).

[12] (Punctuation omitted.) *Bradshaw*, 296 Ga. at 657 (3), citing *United States v. Banks*, 514 F3d 959, 976 (9th Cir. 2008) (holding that evidence of the defendant's prior aggravated assault of the victim who had insulted him was admissible to show motive for his attempted murder of another individual who had insulted him).

10

a defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. [If] the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, [if] the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.[13]

The State argues that the trial court abused its discretion by denying its motion to admit the extrinsic evidence, specifically that the trial court abused its discretion by (1) finding the evidence was not relevant to prove motive, intent, or knowledge, (2) failing to find that the evidence was not temporally remote or factually similar to the instant charges, (3) finding that prosecutorial need was low, and (4) conflating the issue of intent with the issue of identity.

---

[13] (Punctuation omitted.) *Bradshaw*, 296 Ga. at 650, quoting, *United States v. Edouard*, 485 F3d 1324, 1345 (11th Cir. 2007)

The State argues that the trial court conflated intent with identity,[14] but this case actually turns on identity, for which the State admitted at the hearing that the extrinsic evidence was not sufficiently similar to be admitted to show identity. Watson, who was not discovered at the scene, contends he was not involved; the alleged co-conspirators, who were discovered at the scene or by their property recovered from

---

[14]     Evidence offered to prove identity must satisfy a particularly stringent analysis. When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a signature crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed to ensure that the government is not relying on an inference based on mere character—that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act.

(Punctuation omitted.) *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016), quoting *United States v. Phaknikone*, 605 F3d 1099, 1108 (11th Cir. 2010). The State conceded at the hearing that the extrinsic evidence did not meet the standard to be admitted in order to show identity because the crimes were not sufficiently specific.

the scene, made statements indicating Watson was the main perpetrator. Simply put, admission of the evidence would create the risk that the jury would convict Watson based on his propensity for theft and bad character, and the presentation of evidence of the extrinsic acts could create a risk that a jury would seek to punish Watson for the other conduct, even if it did not find the State met its burden to establish that he was involved in the instant crimes.[15]

We agree that the trial court conflated some of the language of the 404 (b) evidence analysis.[16] For instance, the 2012 and 2014 Acts were partially relevant to the motive, intent, and knowledge of the instant crimes,[17] and the trial court failed to engage in an analysis of the temporal remoteness or similarity of the charges to the instant crimes. Nevertheless, we conclude that, ultimately, it did not abuse its

---

[15] See *Jackson*, 306 Ga. at 78 (2) (b) (ii). See also *Kirby v. State*, 304 Ga. 472, 485-486 (4) (a) (ii) (819 SE2d 468) (2018); *Brown v. State*, 303 Ga. 158, 161-162 (2) (810 SE2d 145) (2018); *Parks v. State*, 300 Ga. 303, 307 (2) (794 SE2d 623) (2016).

[16] See *State v. Atkins*, 304 Ga. 413, 422 (2) (c) (819 SE2d 28) (2018) ("Even where a trial court makes an error of law, we may still affirm if we can conclude that, had the trial court applied the correct legal analysis, it would have no discretion to reach a different judgment.").

[17] The State has not shown that the 2016 Act was relevant in this case.

13

discretion in denying the State's motion to admit the extrinsic evidence to show motive, intent, or knowledge.[18]

The trial court was aware of the proper standard and applied it. It is clear from reading the order as a whole that the trial court understood and found that while some of the extrinsic acts in this case were relevant in the technical sense, the factual scenario of this case renders the State's need to have more evidence to prove motive, intent, and knowledge very low because those issues are obvious to a fact finder *after* the *identity* of the perpetrator is determined.[19] The trial court did not abuse its discretion by finding that based on the factual scenario, the State's admission that the evidence is not admissible to show identity, and the defense Watson is presenting, the undue prejudice substantially outweighs the minimal probative value of the evidence as to the issues of intent, knowledge, and motive.[20]

---

[18] See *Brooks*, 298 Ga. at 726 (2).

[19] Compare with *Jones*, 297 Ga. at 160-162 (2) (explaining that it was not an abuse of discretion for a trial court to admit extrinsic evidence of prior convictions for driving under the influence even though specific intent was not required in a case against an individual claiming his head trauma made him appear intoxicated).

[20] See generally *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) ("Nevertheless, it is a fundamental principle that 'harm as well as error must be shown for reversal . . . .'").

The trial court specifically reserved ruling on whether the extrinsic evidence could be admitted for other reasons in the event that, for instance, Watson concedes he was there but argues he was merely present. But based on the facts presented at the hearing and the record, and the arguments made by the State and Watson, we discern no abuse of discretion by the trial court in excluding the extrinsic evidence.

*Judgment affirmed. Coomer and Markle, JJ., concur.*