**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

April 25, 2013

# In the Court of Appeals of Georgia

A13A0690. GAITHER v. THE STATE.

MILLER, Judge.

Russell Gaither was tried by a jury and convicted of burglary. On appeal, he claims that the evidence was insufficient to support his conviction, the trial court erred by instructing the jury on prior consistent statements, and his trial counsel rendered ineffective assistance. Finding no merit in Gaither's claims, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 L. Ed. 2d 560) (1979), and does not weigh the evidence or determine witness credibility.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Viewed in that light, the evidence shows that on May 14, 2008, Thurmond Conner was doing remodeling work on a family member's house located on Gratis Road. He had a container in front of the house for trash from the remodeling work. A blue-gray Chevrolet Celebrity with two men in it stopped at the house and asked Conner if there was any scrap wire or copper in the container that they could have, and he said there was not. At 6:00 p.m., Conner locked all the doors, put everything inside the house, and left for the day. When he returned to the house at 8:00 the next morning, Conner noticed that a small window in the back door was broken and that all of his tools were gone. One of the missing items was a Homelite brand chainsaw with a short blade. Other items that Conner noticed were missing included parts of aluminum window frames, copper fixtures from the tub, sink fixtures from the bathroom, the kitchen faucet, and the copper line from under the sink. The house was unoccupied at the time of the burglary.

As soon as he realized what had happened, Conner called Hariette Brooks, the owner of the Gratis Road residence, and told her about the burglary. She called 911 and the sheriff's office. When Brooks arrived at the residence, she realized she was missing a weed eater, lawn mower, paint, bathroom fixtures, and a towel with the words "Hang Ten" on it.

Brett Davis of the City of Monroe police department responded to the 911 call at the Gratis Road residence. Once he arrived, he realized that the house was located in the county and requested that a sheriff's deputy come and handle the case. While he was waiting for the deputy to arrive, Davis spoke to Brooks and Conner about the items that had been taken. As Conner was describing the men who had stopped by the day before, Davis recalled that he had seen Gaither in a bluish-gray car that same day less than a mile from the Gratis Road residence. When the county deputy arrived, Davis told him that he would look for the missing items inside the city limits and left.

Shortly after leaving the Gratis Road residence, Davis saw Gaither walking down the street, holding a chainsaw with a short blade. As Davis got out of his car, Gaither turned to walk away and Davis detained him. Davis contacted the sheriff's deputies and they asked him to transport Gaither and the chainsaw to the Gratis Road residence. Conner immediately recognized the chainsaw as his. Conner was not able to identify Gaither as one of the men who had been to the Gratis Road residence the day before because the passenger was wearing a hat and sunglasses and never left the car and the height and weight of the driver did not "quite match up" with the person he saw sitting in the back of Davis's patrol car.

The operator of Monroe Pawn testified that shortly after 9:00 a.m. on May 15, 2008, Gaither came into his store and tried to sell him a Homelite brand chainsaw for $10. The pawn shop operator did not buy the saw.

A detective with the Walton County sheriff's office investigated the burglary at the Gratis Road residence. He interviewed Gaither as part of his investigation, and the interview was recorded and played for the jury. When Gaither was picked up prior to the interview, he had a pair of gloves and a beach towel with the words "Hang Ten" on it. After being advised of his *Miranda* rights , Gaither stated that he found the chainsaw on the side of the road near an elementary school with some other items, including a dresser, chairs, vacuum cleaner and paint. He admitted that he had taken the saw to a pawn shop, but only after being confronted with the fact. He said that he found the towel where he found the chainsaw. After the interview and on the way to the booking area, Gaither told the detective, "you can't charge me with burglary because you didn't catch me at the house."

A couple of weeks later, Conner's tools were discovered in a densely wooded area near the Gratis Road residence. Brooks found some of the items taken from her house in the wooded area too, but did not recover the copper piping or fixtures.

4

The State also introduced evidence of a similar transaction from 2005. Gaither was seen outside of an unoccupied house with furniture under his arm. The homeowner's father saw Gaither and saw antique tables from the house in a yellow car parked in the driveway. When the homeowner's father told Gaither that he was stealing from his son's house, Gaither responded that the stuff was just sitting outside the house. He then left quickly in the yellow car. Davis testified that he interviewed Gaither after the 2005 incident and that Gaither admitted that he had entered the house and removed a cedar chest.

Gaither's sister testified on his behalf and stated that Gaither was visiting her the day before he was arrested. She said that he arrived at her house before dark, stayed all night, and was still there at approximately 10:00 the next morning.

Gaither also introduced evidence from a sergeant with the Walton County sheriff's office. He was qualified as an expert in fingerprint comparison and investigation and testified that he was called to the Gratis Road residence on May 15 to collect evidence. He found fingerprints on the inside of the bathroom window and compared them to Gaither's fingerprints, but determined that they did not match. The sergeant confirmed that a person wearing gloves would not leave fingerprints.

5

1. Gaither contends that the evidence was insufficient to prove that he committed the offense of burglary. He argues that the State failed to prove unlawful entry and that guilt cannot be inferred from mere possession of stolen goods.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another. . . ." OCGA § 16-7-1 (2008). "Although there is still validity to the long-established rule that proof of recent, unexplained possession of stolen goods by the defendant is sufficient to create an inference that the defendant is guilty of the burglary of the goods, proof of recent, unexplained possession is not automatically sufficient to support a conviction for burglary." *Bankston v. State*, 251 Ga. 730 (309 SE2d 369) (1983). If the unexplained possession of stolen goods is the only evidence supporting the conviction, "such evidence must establish the offense beyond a reasonable doubt in order to be sufficient to support the conviction." (Citation omitted.) Id. at 731. Otherwise, recent possession of stolen goods will be "viewed as probative evidence of the crime . . . and reviewed along with the other evidence in the case to determine whether any rational

juror could find the defendant guilty beyond a reasonable doubt." (Citation and punctuation omitted.) Id.

Gaither was found with a chainsaw and towel stolen from the Gratis Road residence the same day that the items were discovered missing, within a mile of the residence. He had tried to pawn the chainsaw that same morning. Whether his explanation that he found the items on the side of the road next to an elementary school was satisfactory or reasonable was for the jury to decide. *Mays v. State*, 306 Ga. App. 507, 510 (1) (a) (703 SE2d 21) (2010). The evidence also included similar criminal acts and the fact that other items stolen from the residence were found in a nearby wooded area and had not been moved after Gaither's arrest.

> To support the verdict, circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. Viewing the evidence of this case in a light most favorable to the verdict, we conclude that the jury rationally could have found the evidence excluded every reasonable hypothesis except that of [Gaither]'s guilt.

(Citation and punctuation omitted.) *Slater v. State*, 209 Ga. App. 723, 724 (1) (434 SE2d 547) (1993).

2. Gaither contends that the trial court erred by charging the jury on prior consistent statements.

Gaither's trial attorney submitted the charge on prior consistent statements and did not withdraw it or object to any portion of the trial court's charge. Gaither therefore failed to preserve this objection for appellate review and is entitled to reversal only if the jury instruction constituted "plain error." OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011). To constitute plain error,

> [f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Kelly*, supra, 290 Ga. at 33 (2) (a).

The trial court gave the following instruction on prior consistent statements: "Should you find that any witness has made a statement prior to trial of this case that

8

is consistent with that witness' testimony from the witness stand and such prior consistent statement is material to the case and the witness' testimony, then you are authorized to consider the other statement as substantive evidence."[1]

Gaither initially takes the position that no prior consistent statements were admitted , but then argues that the charge affected his rights because it could have led to jury confusion about whether any prior consistent statement should have been given more weight. The Supreme Court of Georgia has specifically held, however, that this "pattern jury instruction does not explicitly direct the jury to place any additional weight on prior consistent statements beyond that which the law already gives them, which is why it will usually be harmless." *Stephens v. State*, 289 Ga. 758, 760 (1) (b) (716 SE2d 154) (2011). Even if the giving of this instruction on prior consistent statements was error,[2] it did not constitute plain error because it did not affect the

---

[1] This was the pattern charge in effect at the time. See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.60 (4th ed.).

[2] This case was tried in May 2009. In October 2011, the Supreme Court of Georgia held that "an instruction on prior consistent statements should no longer be given except where the circumstances of an unusual case suggest that the jury may have the mistaken impression that it cannot consider a prior consistent statement as substantive evidence." *Stephens*, supra, 289 Ga. at 759 (1) (a). Prior to *Stephens*, this Court had stated that "[t]he better practice would be to give no charge at all on prior consistent statements and leave that matter to the arguments of counsel." *Boyt v.*

9

outcome of the trial court proceedings. See *Kelly*, supra, 290 Ga. at 33 (2) (a); see also *Johnson v. State*, 289 Ga. 106, 110 (5) (709 SE2d 768) (2011) (citations and punctuation omitted) (Even assuming that no prior consistent statements were admitted, "the trial court was merely telling the jurors a legal truism, as they may consider all of the words they hear as substantive evidence, unless the trial court tells them to disregard those words or cautions that the testimony is admitted only for a limited purpose. Thus, the challenged instruction could not have had any effect on the proceedings. . . .").

3. Gaither contends that his trial counsel was ineffective for failing to withdraw her request for the prior consistent statement instruction and for failing to object to the instruction when it was given at the State's request. He also contends that his trial counsel was ineffective for failing to object to irrelevant testimony from Davis.

The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's

_____

*State*, 286 Ga. App. 460, 468 (3) (649 SE2d 589) (2007).

10

deficiency. If the defendant cannot satisfy either of the two prongs of the Strickland test, his ineffective assistance claim fails.

(Citation and punctuation omitted.) *Philpot v. State*, 311 Ga. App. 486, 488-489 (3) (716 SE2d 551) (2011). On appeal of an ineffective assistance claim, "we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, while we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id.

(a) At the motion for new trial hearing, Gaither's trial counsel testified that it was an oversight not to withdraw the prior consistent statement instruction , and that she probably should have objected when the instruction was given. Even so, as a result of our determination that "no reversible error occurred with respect to the jury instruction on [prior consistent statements],[Gaither] cannot succeed on his alternative claim that trial counsel rendered ineffective assistance in failing to object to that instruction." (Citations omitted.) *Howard v. State*, 288 Ga. 741, 747 (6) (707 SE2d 80) (2011).

(b) Gaither contends that his trial counsel should have objected to certain of Davis's testimony about the 2005 similar transaction. Specifically, Davis testified that Gaither "made a statement to me that said he and his girlfriend had brought another

11

male to a dope house somewhere in the area, I believe, on Nowell Street and that, while they were waiting on him to return with narcotics, they saw that material there at the house and they decided to take it to exchange it for - - at a flea market for money." At the motion for new trial hearing, trial counsel testified that she could not recall why she did not object to that testimony. Gaither argues that the testimony about the dope house was irrelevant to the similar transaction and highly prejudicial as bad character evidence against him.

We agree that the testimony at issue was irrelevant to the similar transaction. But even if the testimony had placed Gaither's character in issue, "[a] decision on whether to object when a defendant's character is placed in issue is a matter of trial tactics and does not equate with ineffective assistance of counsel." (Footnote and punctuation omitted.) *Grier v. State*, 276 Ga. App. 655, 663 (4) (d) (624 SE2d 149) (2005).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*