304 Ga. 413
FINAL COPY

S18A0770. THE STATE v. ATKINS.

PETERSON, Justice.

Denzel Atkins has been charged with murder in connection with the shooting death of Elijah Wallace in December 2015. The State filed a pretrial notice of its intent to introduce other acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"). After concluding that the other acts evidence met the criteria for admissibility under the Rule 404 (b) test, the trial court nevertheless excluded some of the evidence about a 2013 murder; it allowed other evidence that connected Atkins to the 2013 murder victim, including evidence that Atkins was involved in the victim's kidnapping. The trial court stated that it excluded evidence of the 2013 murder "out of an abundance of caution." The State appeals from that ruling and argues that the trial court lacked a legal basis to exclude the evidence since the Rule 404 (b) test was satisfied.

Although the trial court has discretion in determining the admissibility of evidence, the requirements of Rule 404 (b) must guide that discretion. The trial

court did not confine its analysis to the purposes for which the State sought to introduce the evidence, it applied a standard we now disapprove for determining whether sufficient proof existed to establish that Atkins committed the 2013 murder, and its reason for excluding the evidence — "an abundance of caution" — is not a permissible basis upon which the court may exclude evidence that is otherwise admissible under Rule 404 (b). We therefore vacate the trial court's order and remand for further proceedings consistent with this opinion.

1. *Background*

(a) *The proffered facts of this case.*

According to the State's factual proffer accepted by the trial court, Wallace's body — shot 13 times — was discovered on the side of a Fulton County road. Wallace was last seen waiting to sell marijuana to someone and, when two men arrived in a grey Nissan Sentra, Wallace entered the back seat of the vehicle. The witness who saw Wallace get into the car said that he heard the sound of several gunshots shortly after the vehicle drove away.

A day after Wallace's body was found, the police recovered a grey Nissan Sentra that had been set on fire and had evidence that an individual had been shot inside. Police interviewed the registered owner of the car, Makayla Ivey; she

2

stated that her boyfriend, Harold Foster, and his friend, Atkins, borrowed her car the evening of December 21. When they returned her car, she noticed a bullet hole in the rear passenger door. Atkins told Ivey that he shot someone in her car and that they dumped the person's body on the side of a road. Atkins said he would burn the car and instructed Ivey to report her car as stolen.

Foster surrendered to police and reported that Atkins reached out to him with the prospect of making some money. Foster said that he and Atkins took Ivey's car to meet Wallace, Atkins and Wallace got into an argument in the car, and Atkins shot Wallace. After driving around for a few blocks, Atkins stopped the car and dumped Wallace's body on the side of the road. As Foster and Atkins drove back home, Atkins threw his gun, the victim's gun, and the victim's cell phone out of the window.

Atkins was arrested and charged in this case with murder, three counts of felony murder, armed robbery, aggravated assault with a deadly weapon, criminal attempt to purchase marijuana, and possession of a firearm during the commission of a felony. The State filed notice of its intent to present other acts evidence under Rule 404 (b) to prove, among other things, intent, motive, identity, and lack of accident or mistake.

(b) *The relevant other acts evidence at issue.*

The other acts evidence at issue relates to the shooting death of another man, Perry Herbert, and formed the basis of a 2013 Candler County indictment against Atkins.[1] Herbert was last seen waiting to complete a drug deal; his body was found on the side of a road in June 2013. Rasheen Jones came forward and told the police that he and Atkins were involved in Herbert's death. Jones reported that Atkins arrived at Jones's house in a Ford Explorer to help Jones buy two pounds of marijuana from Herbert. When they arrived at Herbert's residence, Atkins produced a .45 caliber handgun, demanded that Herbert get into the back seat of the Explorer, and instructed Jones to drive while pointing a gun at Jones. According to Jones, Atkins eventually forced Herbert to leave the vehicle, shot him multiple times, threw Herbert's cell phone out of the car during the drive back to Jones's house, and threatened to kill Jones and his family if Jones said anything about what happened. Atkins was later arrested while driving

---

[1] The State also sought to introduce other acts evidence showing that Atkins was involved in drug transactions that led to criminal charges of conspiracy to distribute marijuana and cocaine. The trial court found this evidence to be admissible, and that ruling is not at issue here.

a Ford Explorer, and a search of the car and a later search of his residence revealed two guns and some marijuana.

Jones and Atkins were subsequently charged with murder and other crimes related to Herbert's death, and Jones pleaded guilty to voluntary manslaughter and armed robbery and agreed to testify at Atkins's trial. At his trial, Atkins argued that he was not present for the crime. The jury acquitted Atkins of murder, felony murder, conspiracy to commit murder, and two counts of possession of a firearm during the commission of a felony. The court declared a mistrial on the remaining counts, which included armed robbery and kidnapping, after the jury was unable to reach a verdict on those counts.

(c) *The trial court's ruling on the State's Rule 404 (b) motion.*

In ruling on the State's motion, the trial court considered the underlying facts of the Candler County case, including Atkins's alibi defense, and ruled that the jury reasonably could have believed that Atkins was involved in the kidnapping and other charges for which the jury could not reach a verdict but not believed that Atkins was a party to Herbert's murder. The trial court found that the other acts evidence was being offered for a legitimate purpose, including for reasons not asserted by the State, and that there was sufficient proof from which

5

the jury could find by a preponderance of the evidence that Atkins "committed at least some, if not all, of the prior acts." The trial court also concluded that the prejudicial impact of the other acts evidence did not substantially outweigh its probative value, noting that the Candler County incident was so similar to the present crime that it "almost qualifie[d] as a signature crime." Based on these findings, the trial court permitted the introduction of evidence showing Atkins's involvement in the drug deal with and kidnapping of Herbert but excluded evidence about Herbert's murder "out of an abundance of caution."

2. *Analysis of the trial court's ruling*

The State argues on appeal that the trial court found that the evidence met each of the prongs of the Rule 404 (b) test for admissibility and was, therefore, without a legal basis to exclude the evidence that Herbert was murdered. The State is incorrect. The trial court found that there was not sufficient proof that Atkins participated in Herbert's murder. But this ruling was based on our precedent that we now overrule, the trial court's exclusion of the evidence "out of an abundance of caution" was not a proper basis to exclude otherwise admissible evidence, and the trial court did not confine its analysis to the

6

purposes sought by the State. Such errors require that we vacate and remand for the trial court to reconsider the matter under the proper framework.

Rule 404 (b) provides in part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

For other acts evidence to be admissible, a three-part test must be satisfied. Jones v. State, 301 Ga. 544, 545 (802 SE2d 234) (2017). The trial court must find that: (1) the other acts evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"), and (3) there is sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the acts. Jones, 301 Ga. at 545; Bradshaw v. State, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015).

We review a trial court's decision regarding Rule 404 (b) evidence for an abuse of discretion. See State v. Jones, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015). But even where a trial court's ultimate ruling is subject to only an abuse

7

of discretion review, the deference owed the trial court's ruling is diminished when the "trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree." State v. Porter, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011).

Here, the trial court articulated its analysis in terms of Rule 404 (b). But the trial court's findings did not fully align with the requirements of that test. Although many of those findings are not directly challenged, as the State challenges only the court's ultimate ruling and Atkins did not file a cross-appeal, we must nevertheless review them because they form the basis for the court's ultimate judgment.

(a) *The trial court's analysis of relevance was inconsistent with the Rule 404 (b) test.*

Neither party takes issue with the trial court's analysis at step one of the Rule 404 (b) test, but we nevertheless start there,[2] because determining relevance depends on the issue for which the evidence is offered, and the Rule 403 balancing of probative value versus unfair prejudice depends on the issue for

---

[2] There is no requirement that trial courts apply the three-part Rule 404 (b) test in any particular order. In some cases it may be more efficient to determine whether there is sufficient proof that the defendant committed the act before moving on to the rest of the test.

which the evidence is relevant.[3] "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404 (b) is whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U. S. 681, 686 (108 SCt 1496, 99 LE2d 771) (1988); see also United States v. Veltmann, 6 F3d 1483, 1499 (11th Cir. 1993) ("The court must first assure that the [Rule 404 (b)] evidence is relevant to an issue other than defendant's character[.]").

Before the trial court, the State articulated, at most, a clear hypothesis only as to the issues of intent, knowledge, identity, and lack of accident.[4] See OCGA § 24-4-404 (b) ("The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial."); see also Jones, 297 Ga. at

---

[3] Certain evidence may be relevant to more than one permissible purpose, but it may not be very probative as to certain purposes, or at least not probative enough to survive a Rule 403 balancing test. A trial court could thus admit the other acts evidence for certain limited purposes and instruct the jury to consider the evidence only for those purposes.

[4] In its motion and supporting brief, the State argued that the other acts evidence was relevant to establish intent, knowledge, identity, and lack of accident. At the hearing on its Rule 404 (b) motion, the State argued that it wanted to introduce the other acts evidence to show motive and intent. At oral argument before this Court, the State promised that it would use the evidence only to establish intent and identity. The State also argued that the evidence should be admitted so it could argue the doctrine of chances, but as explained below, this is not an independent basis upon which to admit Rule 404 (b) evidence.

162-163 (2) (other acts evidence is "relevant if the State articulates a clear hypothesis showing that the evidence offered has any tendency to prove or disprove the existence of any consequential fact independent of the use forbidden by Rule 404 (b)"). But in ruling on the State's motion, the trial court found that the Candler County incident was being offered for a legitimate purpose and then proceeded to name every purpose enumerated in Rule 404 (b), even those that the State never mentioned as being at issue in this case. The court's overly broad finding is, at least in part, not supported by clear hypotheses advanced by the State or reasoning by the trial court. See United States v. Davis, 726 F3d 434, 442 (3d Cir. 2013) (trial court "in the first instance, rather than the appellate court in retrospect," must articulate reasons why Rule 404 (b) evidence is relevant); United States v. Youts, 229 F3d 1312, 1317 (10th Cir. 2000) ("A broad statement merely invoking or restating Rule 404 (b) will not suffice." (citation and punctuation omitted)); United States v. Robinson, 700 F2d 205, 213 (5th Cir. 1983) (factual findings and conclusions "further the efforts of both the

trial and appellate court to follow the Rule 404 (b) analysis mandated by [United States v. Beechum, 582 F2d 898 (5th Cir. 1978)]").[5]

We need not decide whether this error was reversible, however, because the trial court's relevance ruling is not challenged on appeal, and such a determination is unnecessary given that we are remanding the case for the trial court to redo the Rule 404 (b) test. The overly broad finding nevertheless diminishes the deference we are to give to the court's ultimate ruling.

(b) *We disapprove our precedent that the trial court was bound to follow in determining whether there is sufficient proof for a jury to find that Atkins committed the other acts.*

Atkins argued that the collateral estoppel doctrine of the United States Constitution's Double Jeopardy Clause precludes the State from relitigating his involvement in Herbert's murder, because he presented an alibi defense in the Candler County case and that jury resolved the issue of his involvement in his favor by acquitting him of murder. The trial court rightly concluded that Atkins's acquittal of certain charges in the Candler County case did not automatically

---

[5] Beechum is the seminal case in the Eleventh Circuit on the admissibility of other acts evidence, see United States v. Hernandez, 896 F2d 513, 520 (11th Cir. 1990), and has therefore been routinely cited by this Court in resolving Rule 404 (b) issues. See, e.g., Jones, 297 Ga. at 161 (2); Bradshaw, 296 Ga. at 657 (3).

preclude the State from using the incident for Rule 404 (b) purposes. The trial court followed binding case law in determining the second prong of the Rule 404 (b) test, but that case law is no longer good law, and we now disapprove it.

(i) *The cases Atkins relies on in support of his collateral estoppel argument do not apply here.*

In support of his collateral estoppel argument, Atkins relied primarily on Ashe v. Swenson, 397 U. S. 436 (90 SCt 1189, 25 LE2d 469) (1970) and its progeny, including this Court's decision in Moore v. State, 254 Ga. 674 (333 SE2d 605) (1985). Ashe does not apply, and we disapprove Moore as in conflict with later United States Supreme Court precedent.

In Ashe, a group of masked men robbed six men playing poker. 397 U. S. at 437. The habeas petitioner was acquitted of robbing one of the men, but was convicted at a later trial of robbing a different poker player. Id. at 438-440. The United States Supreme Court ruled that the second trial was barred by the doctrine of collateral estoppel, which the court said was "embodied" in the Double Jeopardy Clause of the Fifth Amendment despite noting that the doctrine originally developed in civil litigation and had only been applied to criminal law about fifty years prior to Ashe. Id. at 443, 445-447. The Ashe Court stated that,

12

when determining whether collateral estoppel applies where a previous judgment of acquittal was based on a general verdict, courts are to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. at 444 (punctuation and footnote omitted).

We followed this instruction in Moore, where we considered whether collateral estoppel barred the admission into evidence of prior acts for which the defendant was previously acquitted.[6] 254 Ga. at 674. In resolving that question, we looked at the defendant's first trial and concluded that, because the defendant's identity was very much in dispute in the earlier trial and was resolved in the defendant's favor through an acquittal, the State could not relitigate this issue by introducing the prior acts into evidence. Id. at 677; compare Johnson v. State, 292 Ga. 22, 26-27 (4) (733 SE2d 736) (2012) (trial court properly decided collateral estoppel claim where the defendant failed to

---

[6] Although Moore was decided under the old Evidence Code, which categorized evidence of this type as similar transaction evidence, this fact alone does not negate its application here. Moore concerned a constitutional issue regarding the admissibility of prior criminal acts, and the re-codification of our evidence rules does not alter the reach of Moore's constitutional holding.

introduce pertinent records of prior trial to support claim that prior acquittal precluded relitigation of disputed factual issue).

Moore applied Ashe's principles, but those principles do not govern the admissibility of other acts evidence. The United States Supreme Court made that clear five years after Moore in Dowling v. United States, 493 U. S. 342 (110 SCt 668, 107 LE2d 708) (1990). The defendant there argued that his prior acts were inadmissible pursuant to Ashe, but the Court expressly declined to extend Ashe "and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." Id. at 348. The Court held that an acquittal in a criminal case does not bar the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. Id. at 348-349. Because the admissibility of evidence under Rule 404 (b) was governed by a lower standard (preponderance) than the question of guilt in the prior criminal prosecution (beyond a reasonable doubt), the Court found no error in admitting evidence of a defendant's prior acts for which he was previously acquitted for Rule 404 (b) purposes, explaining that a

14

jury might reasonably conclude by a preponderance of the evidence that the defendant committed the prior acts even though the jury was not convinced of that fact beyond a reasonable doubt. Id. at 348-350.[7]

Our decision in <u>Moore</u> cannot be squared with <u>Dowling</u>.[8] <u>Moore</u>'s holding rests squarely on the principles laid out in <u>Ashe</u>. But <u>Ashe</u>'s foundation proves too weak to extend beyond the procedural context of that case. See <u>Currier v. Virginia</u>, ___ U. S. ___, ___ (138 SCt 2144, 201 LE2d 650) (2018) (noting arguments that <u>Ashe</u> "sits uneasily" with that Court's double jeopardy precedent and the Constitution's original meaning). <u>Dowling</u>'s express refusal to extend <u>Ashe</u>'s holding (and <u>Ashe</u>'s subsequent treatment by the United States Supreme

---

[7] Atkins correctly points out that <u>Dowling</u> applied the <u>Ashe</u> rule, but only as part of an alternative basis for rejecting the defendant's claim that the prior acts were inadmissible. <u>Dowling</u>, 493 U. S. at 350-352 ("Even if we agreed with petitioner that the lower burden of proof at the second proceeding does not serve to avoid the collateral-estoppel component of the Double Jeopardy Clause . . ."; "[E]ven if we were to apply the Double Jeopardy Clause to this case . . ."). But an alternative holding does not undermine the Court's other holding, which was a clear ruling that <u>Ashe</u> does not extend to the situation presented in this case. We know that this application was alternative to the Supreme Court's holding, because the Court said so when it expressly ruled that <u>Ashe</u> could not serve to exclude admissible evidence. Id. at 348.

[8] This is not the first case in which <u>Moore</u>'s viability has been questioned. We previously declined to decide whether <u>Moore</u> remained good law given its apparent conflict with <u>Dowling</u>, because it was unnecessary to do so in that case. See <u>Humphrey v. Williams</u>, 295 Ga. 536, 555 (2) (d) n.8 (761 SE2d 297) (2014). This case requires us to confront <u>Moore</u>'s holding.

15

Court) show that <u>Ashe</u>'s holding does not extend here: the Double Jeopardy Clause bars a second trial only where, to convict the defendant, the second jury would have to reach a conclusion "directly contrary" to that reached by the first jury. <u>Dowling</u>, 493 U. S. at 347-348; see also <u>Currier</u>, 138 SCt at 2150 ("<u>Ashe</u> forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial.").[9] <u>Moore</u> was wrong to extend <u>Ashe</u> to control the admission of Rule 404 (b) evidence, and it is hereby disapproved.[10]

(ii) *The trial court erred by applying the principles of <u>Moore</u>.*

---

[9] A plurality of the <u>Currier</u> Court concluded that double jeopardy protection bars retrial of the same offense and not the relitigation of issues or evidence, and that <u>Ashe</u> pressed the boundaries of the double jeopardy test set forth in <u>Blockburger v. United States</u>, 284 U. S. 299 (52 SCt 180, 76 LE 306) (1932), "by suggesting that, in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense." <u>Currier</u>, 138 SCt at 2153; see also <u>Yates v. United States</u>, 354 U. S. 298, 337-338 (77 SCt 1064, 1 LE2d 1356) (1957) ("[T]he doctrine of collateral estoppel does not establish any such concept of 'conclusive evidence'. . . . So far as merely evidentiary or 'mediate' facts are concerned, the doctrine of collateral estoppel is inoperative."), overruled on other grounds by <u>Burks v. United States</u>, 437 U. S. 1 (98 SCt 2141, 57 LE2d 1) (1978).

[10] We need not consider whether stare decisis nevertheless counsels us to retain <u>Moore</u>, because we are bound to follow the holdings of the United States Supreme Court on questions of federal law. See <u>Lejeune v. McLaughlin</u>, 296 Ga. 291, 298 (2) (766 SE2d 803) (2014); see also <u>George v. Hercules Real Estate Services</u>, 339 Ga. App. 843, 854-855 & n.3 (795 SE2d 81) (2016) (Peterson, J., concurring specially) (noting that stare decisis considerations do not allow courts to retain precedent that is inconsistent with binding decisions of a higher court).

16

The trial court did not cite Moore in its Rule 404 (b) order, but the court's language reflects an understandable application of Moore's principles to this case. The court reviewed "the underlying facts" to "determine whether those facts preclude" the admission of the murder evidence as other acts evidence, interpreted the Candler County jury's verdict, taking into account Atkins's alibi defense and the alleged participation of a co-defendant (Jones), and concluded that "[t]he jury could have reasonably believed that Defendant was involved in the kidnapping and other charges for which the jury could not reach a verdict, but still not have believed Defendant knew or was a party to the murder." An examination of a prior proceeding to determine whether the other acts evidence is "precluded" is the hallmark of Moore's collateral estoppel test. Although the trial court was bound by Moore at the time of its order and thus properly followed it, we nevertheless now conclude that Moore's analysis is in error.

The trial court's focus on the grounds for the Candler County jury's verdict clouded its analysis on the second prong. Two sentences after the trial court determined what the Candler County jury believed, the court found that there was sufficient proof that the jury could find by a preponderance of the evidence that Atkins "committed at least some, if not all, of the prior acts." These findings, and

17

its ultimate ruling to exclude the murder evidence, suggest that the court did not believe there was sufficient evidence to show Atkins was involved in Herbert's murder because he was acquitted of that offense. The trial court did not err in looking to results of the prior proceeding to determine the sufficiency of the proof; after all, these details were included in the State's factual proffer in support of its Rule 404 (b) motion. But the trial court was precluded by <u>Moore</u> from recognizing that the Candler County jury could have reasonably believed that Atkins committed the murder yet not believed it beyond a reasonable doubt. See <u>Dowling</u>, 493 U. S. at 348-349 ("Because a jury might reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the . . . trial [for that offense], the collateral-estoppel component of the Double Jeopardy Clause is inapposite."). Because the court applied collateral estoppel principles to determine the admissibility of other acts evidence, the court erred at the second step of the Rule 404 (b) test.

(c) *The trial court erred in excluding the evidence "out of an abundance of caution" because this is not a legal ground to exclude otherwise admissible evidence.*

Even where a trial court makes an error of law, we may still affirm if we can conclude that, had the trial court applied the correct legal analysis, it would have no discretion to reach a different judgment. See State v. Pickett, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011). We cannot do so here, though.

For Rule 404 (b) evidence to be admitted, it must also meet the test of Rule 403. Olds v. State, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016). Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

The Rule 403 balancing test calls for the exercise of the trial court's discretion. Bradshaw, 296 Ga. at 657-658 (3). This discretion is broad, but it is not unlimited. Such "discretion does not sanction exclusion of competent evidence without a sound, practical reason." Ramos v. Liberty Mutual Ins. Co., 615 F2d 334, 340 (5th Cir. 1980) (citation omitted); see also Borden, Inc. v. Fla. E. Coast Ry. Co., 772 F2d 750, 754 (11th Cir. 1985); Koloda v. Gen. Motors

19

Parts Div., Gen. Motors Corp., 716 F2d 373, 378 (6th Cir. 1983); Anderson v. Malloy, 700 F2d 1208, 1212 (8th Cir. 1983). That is because "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence[.]" Jones, 297 Ga. at 164 (3) (citation and punctuation omitted).

The trial court determined that the probative value of the evidence was not substantially outweighed by unfair prejudice. This language is generally understood as a shorthand to describe the Rule 403 balancing test. See, e.g., Smart v. State, 299 Ga. 414, 418 (2) (b) (788 SE2d 442) (2016) ("We . . . must address whether the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403." (citation and punctuation omitted)). Although the trial court cited the requirements of the Rule 403 balancing test, a proper application of that test depends on the purpose for which it is offered. Setting aside whether the court's Rule 403 balancing was correct in the absence of a purpose-by-purpose analysis — especially where the trial court's order said the evidence was admissible for every purpose enumerated in Rule 404 (b), see

20

Division 2 (a) — the trial court's reason for excluding the evidence of the Chandler County murder was not permissible.

The court excluded the evidence of the murder "out of an abundance of caution." Rule 403 provides a list of reasons authorizing a trial court to exclude otherwise admissible and relevant reasons. "An abundance of caution" is not one of those enumerated grounds. Rule 404 (b) is a rule of inclusion and Rule 403 is an extraordinary exception to that inclusivity. See Jones, 297 Ga. at 159 (2), 164 (3). The court's basis for excluding the murder was thus unsound. Given this legal error, along with its correct application of our now-disapproved decision in Moore and failure to align the purposes for which the State wants to use the Rule 404 (b) evidence with the purposes the trial court determined appropriate, we vacate and remand.

3. *The doctrine of chances is not a separate purpose to admit other acts evidence.*

The State also argues that the doctrine of chances is a legitimate, non-character purpose of Rule 404 (b) evidence, and that we should instruct the trial court on remand to rule on the State's argument that the other acts here are

21

admissible for this purpose. We decline to do so, because the trial court would have no discretion to admit the evidence for this purpose.

"The doctrine of chances relies on objective observations about the probability of events and their relative frequency, and the improbability of multiple coincidences." United States v. Henthorn, 864 F3d 1241, 1252 n.8 (10th Cir. 2017). The doctrine of chances explains, then, that "highly unusual events are highly unlikely to repeat themselves." United States v. York, 933 F2d 1343, 1350 (7th Cir. 1991) ("The man who wins the lottery once is envied; the one who wins it twice is investigated."), overruled on other grounds by Wilson v. Williams, 182 F3d 562 (7th Cir. 1999).

We have never endorsed the doctrine of chances as a stand-alone purpose for other acts evidence, although we have made passing reference to the doctrine. In Jones, we cited a legal scholar who commented that the relevance of other acts evidence in general intent cases is based on the doctrine of chances. Jones, 297 Ga. at 162 (2) n.7 (citing Edward J. Imwinkelried, Uncharged Misconduct Evidence, § 5:10, p. 37 (2009 and Supp. 2012-2013)). That same legal scholar explained that the doctrine of chances satisfies the legal need to show that the other acts help prove that the defendant committed the charged crime without

22

relying on the defendant's character. Imwinkelried, Uncharged Misconduct Evidence, § 4:1. A review of the cases cited by the State and other cases found in our research confirms this view; the doctrine is not an independent ground upon which to admit other acts evidence, but is instead a theory why other acts evidence may be relevant to prove intent, knowledge, or identity and disprove accident or mistake. See, e.g., Jones, 297 Ga. at 162 (2); United States v. Queen, 132 F3d 991, 996 (4th Cir. 1997) ("[T]he prior doing of other similar acts is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances that satisfies our logical demand." (quoting Wigmore on Evidence, § 302, at 245 (Chadbourn rev. 1979) (punctuation omitted)); United States v. Woods, 484 F2d 127, 135 (4th Cir. 1973) (although not invoking doctrine of chances by name, discussing underlying logic to conclude that other acts proved "the identity of defendant as the wrongdoer"); Commonwealth v. Hicks, 156 A3d 1114, 1132 (Pa. 2017) (Saylor, C. J., concurring) ("[M]ost jurisdictions recognize the 'doctrine of chances' . . . as a theory of logical relevance that does not depend on an impermissible inference of bad character, and which is most greatly suited to disproof of accident or mistake.").

23

The State relies heavily on the analysis in York, but that case does not support its argument. In York, the defendant was convicted of, among other things, arson and mail fraud for setting fire to a bar that killed his business partner and then attempting to collect on insurance policies on the bar and on the partner's life. 933 F3d at 1345-1348. He argued on appeal that the trial court erred in admitting other acts evidence related to his first wife's murder. After concluding that the other acts evidence was relevant to show the defendant's plan to commit the crimes, the York court cited the doctrine of chances in explaining why the evidence was also relevant to show the defendant's intent and to rebut his innocent explanations for his conduct. Id. at 1349-1350 ("[T]he odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance." (citation omitted)). York does not hold that the doctrine of chances is a separate ground of admissibility, but merely that it establishes the logical inferential chain that can be drawn from other acts to show intent or lack of accident. Because the doctrine of chances is not an

24

independent ground to admit other acts evidence, the State may not introduce the other acts for this independent purpose.

Judgment vacated and case remanded. Melton, C. J., Nahmias, P. J., Benham, Hunstein, Blackwell, and Boggs, JJ., concur.

Decided September 10, 2018.

Murder. Fulton Superior Court. Before Judge LaGrua.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Scott F. McAfee, Kevin C. Armstrong, Linda J. Dunikoski, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Tamara N. Crawford, Sandra K. Wolfe, for appellee.