**FIFTH DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J. and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**December 4, 2018**

# In the Court of Appeals of Georgia

A18A1693. ROBINSON v. THE STATE.

RICKMAN, Judge.

James Michael Robinson was tried by a jury along with two co-defendants, Elmonte Surry and Xavius Bell,[1] and convicted on six counts of armed robbery, one count of criminal attempt to commit armed robbery, seven counts of possession of a firearm during the commission of a crime, and two counts of hijacking a motor vehicle. On appeal, Robinson contends, inter alia, that there was insufficient evidence to support his convictions beyond a reasonable doubt. For the following reasons, we reverse.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer

---

[1] Surry and Bell are not parties to this appeal.

enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the evidence showed that one Saturday night in December 2012, the owner of a convenience store was at the store playing cards with several of his friends. Three young men came into the store and, after walking around, purchased some snacks and left. Approximately ten minutes later, one of the three men came back into the store, purchased a soda and left again. Two of the men then came back into the store, but this time one of them was armed with a handgun.

The taller of the three men attempted to open the cash register while the shorter gunman, whose face was obscured by a scarf, demanded that the owner and his friends get on the floor. The gunman forced the owner to help the taller man open the cash register, and approximately $200 was taken from the register. The gunman then ordered everyone to take off their pants. The third man came into the store and altogether they stole jewelry, cash, and cell phones from several of the victims,

including the owner. The gunman asked for the keys to two vehicles that were parked outside.

After the three men got the keys, they drove off in the two separate vehicles. One of the victims had a gun with him and gave the gun to another victim who fired at one of the vehicles. That vehicle hit a telephone pole, and its occupant(s) were picked up by the driver of the other stolen vehicle.

A sergeant with the Richmond County Sheriff's Office testified that one of the victims was able to identify Surry and Bell in a photo line-up as two of the perpetrators. Additionally, Surry's fingerprints were found on a cigar box recovered from one of the stolen vehicles. The sergeant showed a photo line-up containing Robinson's photograph to two of the victims, but neither were able to identify him. Moreover, none of the seven victims who testified at trial were able to identify Robinson as one of the perpetrators.

The owner testified that after the robbery, a friend of his informed him that he had seen the owner's jewelry in the possession of a man named Carter. After speaking with his friend, the owner called and told an investigator. The owner testified that some of his missing jewelry was returned to him. Carter testified that on the morning after the robbery, he bought a couple of rings and a bracelet from Robinson whose

nickname was "Little James." Carter testified that there were several other people "right there" with Robinson when he purchased the jewelry. When Carter found out that the jewelry belonged to the owner, he testified that he "g[o]t rid of it;" but after speaking with law enforcement he was able to arrange the return of the jewelry to law enforcement. Carter was convicted of theft by receiving stolen property as a result of his involvement in this case.

An investigator with the Richmond County Sheriff's Office testified that there were initially four suspects in the armed robbery: Bell, Surry, Robinson, and Carter. The investigator eliminated Carter as a suspect because Carter was not identified in a photo line-up,[2] and neither his fingerprints nor his DNA were found at the crime scene or in any of the stolen vehicles. The investigator admitted that Robinson, too, was not identified in a photo line-up and his fingerprints and DNA were not found at the crime scene or in the stolen vehicles.

A retired employee from the department of juvenile justice testified that he had an appointment scheduled with Robinson mid-morning on the day after the robbery. It was his only appointment that Sunday. The employee testified that on the morning

---

[2] The investigator was not sure if Carter's photograph was actually ever included in a line-up.

of the appointment he received a missed phone call and when he returned the call no one answered, but he "got a voicemail that stated, this is [the owner of the convenience store.]" The employee did not recall what telephone number was associated with this phone call, and he was unsure who had called him from this number. Thereafter, the employee received a phone call from Robinson who stated that he was on the way to the appointment. The employee did not know what telephone number Robinson called from.

The grand jury returned an indictment charging Robinson with six counts of armed robbery,[3] one count of criminal attempt to commit armed robbery,[4] seven counts of possession of a firearm during the commission of a crime,[5] and two counts of hijacking a motor vehicle.[6] Robinson was convicted on all of the charges. Robinson filed a timely motion for new trial which was denied by the trial court. Robinson appeals from the denial of his motion for new trial.

---

[3] OCGA § 16-8-41 (a).

[4] OCGA § 16-4-1.

[5] OCGA § 16-11-106 (b) (1).

[6] OCGA § 16-5-44.1 (b) (1).

Robinson contends that the evidence was insufficient to support his conviction beyond a reasonable doubt due to a lack of evidence linking him to the crimes. We agree.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). Regarding unexplained possession of stolen goods following an armed robbery,

> [a]lthough there is still validity to the long-established rule that proof of recent, unexplained possession of stolen goods by the defendant is sufficient to create an inference that the defendant is guilty of the [robbery] of the goods, proof of recent, unexplained possession is not automatically sufficient to support a conviction for [armed robbery].

(Citation and punctuation omitted.) *Gaither v. State*, 321 Ga. App. 643, 646 (1) (742 SE2d 158) (2013); see also *Roberts v. State*, 277 Ga. App. 730, 731-732 (627 SE2d 446) (2006) ("While the unexplained (or unsatisfactorily explained) possession of goods stolen in an armed robbery or burglary gives rise to an inference of guilt, it does not automatically support a guilty verdict."). "If the unexplained possession of stolen goods is the only evidence supporting the conviction, such evidence must

6

establish the offense beyond a reasonable doubt in order to be sufficient to support the conviction." (Citation and punctuation omitted.) *Gaither*, 321 Ga. App. at 646 (1). "Otherwise, recent possession of stolen goods will be viewed as probative evidence of the crime and reviewed along with the other evidence in the case to determine whether any rational juror could find the defendant guilty beyond a reasonable doubt." (Citation and punctuation omitted.) Id.

Here, the evidence as to Robinson's unexplained possession of stolen goods following the armed robbery was Carter's testimony that he bought a couple of rings and a bracelet from Robinson while several individuals were present on the Sunday morning after the robbery. Additionally, the victim testified that he had rings stolen during the robbery, he heard from a friend that Carter had his jewelry, and some of his jewelry was eventually returned. Neither the jewelry nor any photographs of the jewelry were introduced into evidence. The investigator testified that he recovered the jewelry from Carter and that he returned the jewelry to the owner's daughter-in-law. The investigator did not testify that the victim positively identified the exact jewelry obtained from Carter as his jewelry that was stolen in the robbery.

The only other evidence offered against Robinson was that on the day after the robbery he had a meeting with a juvenile justice employee and that the employee

7

received a call from what he presumes was the owner's phone number. The employee testified that he did not know who called him from that phone number and that he did not know what the phone number was. There was also testimony that Robinson was five feet, three inches tall and that the gunman was short.

The State argues that "th[e] recent unexplained possession, coupled with evidence that the gunman was short and that [Robinson] was nicknamed 'Little James' because he was small in stature [was] sufficient evidence to support the convictions in this case."[7] Pretermitting whether the State established that Robinson was in recent possession of the stolen jewelry, the evidence was not strong enough to establish the crimes charged beyond a reasonable doubt. To establish beyond a reasonable doubt that Robinson was one of the men who committed the crimes

---

[7] Citing a case from the U. S. Court of Appeals for the Armed Forces, the State also argues that the doctrine of chances can "shed light on" the circumstantial evidence in this case. "The doctrine of chances relies on objective observations about the probability of events and their relative frequency, and the improbability of multiple coincidences." (Citation omitted.) *State v. Atkins*, __ Ga. __ (3) (S18A0770, decided September 10, 2018). "The doctrine of chances explains, then, that highly unusual events are highly unlikely to repeat themselves." (Citation and punctuation omitted.) Id. The doctrine is generally discussed in reference to the admission of other acts evidence and is "a theory [as to] why other acts evidence may be relevant to prove intent, knowledge, or identity and disprove accident or mistake." Id. The doctrine of chances is inapplicable to this case because there was no evidence that Robinson had been involved in any other acts that were similar to the charged crimes.

charged, there simply must be more evidence than that he was short, another suspect's testimony that he recently possessed stolen property, and testimony about a suspicious phone call. The evidence "raises a suspicion, but a conviction cannot rest upon mere suspicion." (Citation and punctuation omitted.) *Shy v. State*, 220 Ga. App. 910, 911 (1) (470 SE2d 484) (1996). See generally *Johnson v. State*, 277 Ga. App. 499, 504 (1) (b) (627 SE2d 116) (2006) (holding that the evidence was insufficient to support a defendant's convictions for armed robbery, kidnapping, aggravated assault, and possession of a firearm during the commission of a crime where the State's evidence showed mere association with his co-defendants, and there was no identification or physical evidence linking him to the crimes); see also *Heard v. State*, 126 Ga. App. 62, 68 (10) (189 SE2d 895) (1972) ("The fact that the car was a stolen car and that the defendant had possession of same is not alone sufficient to authorize a conviction for the offense of theft by knowingly receiving stolen property."). Accordingly, we reverse Robinson's convictions.

*Judgment reversed. Miller, P. J., and McFadden, P. J., concur.*