**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 12, 2022**

# In the Court of Appeals of Georgia

A22A0969. ALLEN v. THE STATE.

LAND, Judge.

On appeal from his convictions for armed robbery, aggravated assault and other crimes, Nathaniel Allen argues that the trial court abused its discretion when it authorized the admission of evidence of a second armed robbery also committed by Allen. We agree and reverse the trial court's denial of Allen's motion for a new trial.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict, the record shows that at around 10 p.m. on July 8, 2016, a man who had finished his shift as a waiter at a Mexican restaurant in Adel had picked up food from a Chinese restaurant and was walking through a shopping center parking lot with his wife and three-year-old daughter when two men wearing shorts approached the family. One of the men put a gun to the back of the woman's neck while the robbers took her purse. The other robber put another gun to the man's head, told him not to move or he would "have a serious problem," and took his wallet and cell phone. One of the robbers then struck the male victim in the head with the gun, and the two robbers walked away.

A second armed robbery occurred less than two weeks later at a convenience store about a mile away from the first crime scene. A videotape of this second robbery showed that one of the robbers was wearing a distinctive pair of shoes. Police posted still images from this video on the department's Facebook page. Acting on a tip, police identified Allen as he came out of an area grocery store and arrested him. At the time of his arrest, Allen was wearing the same shoes as in the video of the second robbery. After Allen's arrest as to the second robbery, the male victim, who had

2

recognized Allen from the Facebook post, picked his mug shot out of a photo lineup. The male victim also identified Allen at trial as one of the two men who had robbed him, but did not identify any shoes or hat that Allen may have worn at that time. The female victim never identified Allen.

Allen was charged with two counts of armed robbery and one count each of aggravated assault, possession of a firearm by a convicted felon, and terroristic threat. Allen's first trial in October 2017 ended in a mistrial. On the morning of the second day of the February 2018 trial at issue, the trial court granted the State's motion to introduce evidence of the second robbery "for the limited purpose of [establishing Allen's] identity."

In the course of the trial, the State introduced testimonial, physical, and video evidence of the second robbery over Allen's repeated objections.[1] State's Exhibit 5, a selection from which was played for the jury and which is included in the appellate record, consists of 11 different videos taken from surveillance cameras posted in and around the scene of the second robbery. The videos show two men entering the store,

---

[1] Although the trial transcript does not include a pretrial hearing or ruling as to the admission of evidence concerning the second armed robbery, the State does not dispute that Allen made and preserved his objection to the introduction of this evidence, including the playing of the surveillance video for the jury and the display of the still photographs taken from it and posted on Facebook.

with one (in a white shirt) asking for a product at the counter while the other (in a bright blue cap) approaches the cashier from behind. When the second man, later identified as Allen, puts a gun to the cashier's head and forces her to the ground, the first man takes the cash drawer out of the register, and both flee on foot. State's Exhibit 6, which is not included in the appellate record, apparently consisted of six still photographs, including blowups of Allen's black Nike tennis shoes with bright blue shoelaces. State's Exhibit 7 was the shoes themselves. After the close of evidence, the trial court charged the jury that evidence of other acts committed by Allen "may be considered only to the extent that it may show identity [] that the State is required or authorized to prove in the crimes charged," and that such evidence "may not be considered . . . for any other purpose." Allen was found guilty, convicted, and sentenced to two consecutive life sentences plus 10 years to serve. His motion for new trial was denied.

On appeal, Allen repeats his argument below that evidence of the second robbery, including the videotape, the still photographs taken from it, and the shoes seen there and worn by Allen at the time of his apprehension, had no probative value as to these charges, with the admission of this evidence sufficiently prejudicial to require a new trial.

4

1. As a preliminary matter, and because we must consider sufficiency in order to determine whether Allen may stand trial for a third time on these charges, we conclude that the evidence was indeed sufficient to sustain Allen's convictions. See OCGA §§ 16-8-41 (defining armed robbery), 16-5-21 (a) (2) (defining aggravated assault as including assault with a deadly weapon), 16-11-131 (b) (defining possession of a firearm by a convicted felon), 16-11-37 (b) (1) (A) (defining terroristic threat as including a threat to "[c]ommit any crime of violence" with the purpose of terrorizing another), (d) (1) (a terroristic threat suggesting "the death of the threatened individual" is a felony); *Torres v. State*, 361 Ga. App. 149, 155 (3) (863 SE2d 399) (2021) (a threat to shoot up an apartment "suggested the death of the victims" and was thus sufficient to sustain a felony conviction for terroristic threat); *Jackson*, supra.

2. *Probative Value and Undue Prejudice.* Allen's single argument on appeal is that the trial court erred when it admitted evidence of the second robbery, including the video and Allen's shoes, as more probative than prejudicial.

The Supreme Court of Georgia has laid out the relevant law as follows:

OCGA § 24-4-404 (b) ("Rule 404 (b)") provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to

5

prove the character of a person in order to show action in conformity therewith[,]" but that such evidence may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

OCGA § 24-4-403 ("Rule 403") provides [that] "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Under the statutory framework of Rule 404 (b) and Rule 403, extrinsic act evidence may be admitted if a three-part test is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

(Citations and punctuation omitted.) *West v. State*, 305 Ga. 467, 472-473 (2) (826 SE2d 64) (2019).

"Rule 404 (b) is a rule of inclusion and Rule 403 is an extraordinary exception to that inclusivity." (Citation omitted.) *State v. Atkins*, 304 Ga. 413, 423 (2) (c) (819 SE2d 28) (2018) "[W]hen an appellate court reviews the admission of Rule 404 (b)

6

evidence and the proper application of the Rule 403 balancing test, the trial court's decision will not be disturbed unless there is a clear abuse of discretion." (Citation and punctuation omitted.) *West*, 305 Ga. at 473 (2). Finally, "in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Strother v. State*, 305 Ga. 838, 847 (4) (d) (828 SE2d 327) (2019).

Although the State argued that the videotape was admissible to establish not only Allen's identity but also police's "actions in helping identify the suspect," the law is clear that evidence of the conduct of police officers during an investigation is not admissible when that conduct is not relevant to the issues at trial – here, whether Allen committed the *first* armed robbery against these two victims. See *Morris v. State*, 264 Ga. 823, 824-825 (2), (3) (452 SE2d 100) (1995) (evidence that a suspect was ruled out on the basis of a negative polygraph test was "not admissible to explain [the] conduct" of either that suspect or police; "the conduct of the police" was not "relevant to any issue in the trial"). Further, "other acts evidence offered for the purpose of showing identity must be *so similar as to demonstrate that the other act and the charged offense were 'signature crimes*,' with the defendant using 'a modus

7

operandi that is uniquely his.'" (Emphasis supplied.) *Sloan v. State*, 351 Ga. App.

199, 206 (2) (a) (830 SE2d 571) (2019), quoting *Kirby v. State*, 304 Ga. 472, 484 (4)

(a) (i) (819 SE2d 468) (2018). As we have often explained:

> "A much greater degree of similarity between the charged crime and the
> uncharged crime is required when the evidence of the other crime is
> introduced to prove identity than when it is introduced to prove a state
> of mind. Much more is demanded than the mere repeated commission
> of crimes of the same class, such as repeated murders, robberies, or
> rapes."

*Sloan*, 351 Ga. App. at 206, quoting *Amey v. State*, 331 Ga. App. 244, 249-250 (1)

(a) (770 SE2d 321) (2015).

This record shows that the first victim identified his assailants as tall and

wearing white shirts and shorts but never described either man's footwear. This

record thus belies the investigator's passing assertion that Allen's shoes were used

to identify him in the case-in-chief. On the contrary, the State's own evidence shows

that the shoes identified Allen as to the second robbery alone. Only after Allen was

apprehended and identified as the perpetrator of that crime was he charged with the

first robbery on the basis of the male victim's identification of him in the second

photo lineup. The record also shows that the female victim was not able to identify

8

Allen at any point, including at the second trial, because "they kept [her] with [her] face down, looking down" during the crime; that she was "terrified" at the time she was robbed and remained "scared" of retribution "a lot" if she identified the robbers; and that she was "very nervous" and "very afraid" even "up to today."

The State's proffered justification for the introduction of the video of the second robbery was the establishment of generic "similarities" between the two robberies, including the two men's use of guns, their wearing of shorts (in July), their flight on foot, and the mere days between the two crimes occurring in the same town. As we have noted, however, "[m]uch more is demanded" in order to authorize the admission of identity evidence "than the mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes." (Citation and punctuation omitted.) *Sloan*, 351 Ga. App. at 205 (2) (a); see also *Gibson v. State*, 363 Ga. App. 296, 305 (3) (870 SE2d 884) (2022). Further, the prosecutorial need for the introduction of the second video was minimal: the male victim repeatedly identified Allen as his assailant, and the State was not authorized to use evidence of the second robbery for any purpose other than establishing his identity. For all these reasons, the trial court abused its discretion when it authorized the repeated playing of a videotape of the second robbery, "the probative value of [which] was substantially outweighed

9

by the danger of undue prejudice." *Sloan*, 351 Ga. App. at 205 (2). Compare *Tariq-Madyun v. State*, 361 Ga. App. 219, 225-226 (3) (b) (863 SE2d 703) (2021) (six prior robberies all committed at restaurants during opening or closing by a lone defendant wearing the same black clothes and using the same methods were more probative than prejudicial as to motive, plan, preparation, and knowledge).

3. *Harm.* The question here is whether Allen is entitled to a new trial based on the trial court's erroneous admission of the video and still photographs of the second robbery.

> The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so.

(Citations and punctuation omitted.) *Kirby*, 304 Ga. at 478 (3) (c); see also *Harris v. State*, 314 Ga. 238, 283-284 (5) (875 SE2d 659) (2022).

The record shows that although the male victim claimed to be "a hundred percent" certain of his identification of Allen in the second photo lineup, and although he identified Allen as his attacker in the second trial, he expressed doubt about this identification while under oath in the first trial. Although this recantation

10

was explained at the second trial as the product of fear, the fact remains that no physical evidence, such as stolen goods or a weapon, was recovered or introduced, such that the only relevant and admissible evidence establishing Allen as a perpetrator of the first robbery was the male victim's identification of him. See *Harris*, 314 Ga. at 284 (5) (a high risk of prejudice from improperly admitted evidence "might be offset only by the most compelling properly admitted evidence of guilt") (citation and punctuation omitted).

Here, moreover, as in *Sloan*, "the jury was improperly charged that the [second robbery] could be used for the purpose of identity," and the prosecution emphasized Allen's identity in the first crime as proved by the video of the second, which amounts to "precisely the kind of propensity argument that Rule 404 (b) is designed to guard against." (Punctuation and citation omitted.) *Sloan*, 351 Ga. App. at 211 (2) (f); see also *Harris*, 314 Ga. at 284 (5) (erroneously admitted evidence "added sharper, more damning, and more plainly criminal details to the State's portrayal of Appellant as a man of despicable character who deserved punishment"). For both of these reasons, we cannot say that the evidence against Allen was "so overwhelming," or "the improper character evidence was so marginal, that the jury's verdict was not likely to be impacted." *Sloan*, 351 Ga. App. at 212 (2). We therefore vacate Allen's

11

convictions, reverse the trial court's denial of Allen's motion for new trial, and remand the case for a new trial. Any further proceedings should not include the admission of evidence of the second robbery for purposes of proving Allen's identity.

*Judgment reversed. McFadden, P. J., and Gobeil, J., concur*.